DAVENPORT GAS AND ELECTRIC COMPANY v. CITY OF DAVENPORT *et al.*, Appellants; CITY OF DAVENPORT, Appellant, v. DAVENPORT GAS AND ELECTRIC COMPANY *et al.*

Cities: MANDATORY ORDER: DEMAND. Where the only reason for asking a mandatory order grows out of a change in the issues during the trial, the notice provided in Code, section 4346, is not required.

Ordinances: PARTIAL INVALIDITY. The invalidity of one portion of an ordinance does not of necessity invalidate the whole.

Cities: IMPLIED POWER. The power given a city to provide light for its streets, implies the power to purchase it and contract for such service.

Cities: POWER TO CONTRACT FOR LIGHTS. By Chapter 78 of the Acts of the 14th General Assembly, as amended by Chapter 11 of Acts of the 22nd General Assembly, a city was expressly granted power to make a valid contract for lights for term of twenty-five years.

Exclusive Contract. Where a city has power to contract for lights for a specified period, the contract is not void for exclusiveness.

Ordinances: CONSTRUCTION. An ordinance granting a twenty-five year franchise to a lighting company, provided that at each five-year period the city might require the machinery and appliances to be in good condition, and of such approved design as to furnish light of required standard and power, so that the city should have the advantage of all improvements in the production of light, is held not to empower the city to require an entire change in machinery and appliances.

*Appeal from Scott District Court.*—HON. P. B. WOLFE, Judge.

TUESDAY, MARCH 15, 1904.

ON the 6th day of February, 1896, the defendant city

of Davenport passed an ordinance authorizing the plaintiff " to erect and maintain a gas, electric light, and steam-heating plant within said city, and to enter upon and occupy the streets, avenues, alleys, and public grounds " thereof * * * " with its pipes, mains, conduits, poles, posts, wires, and other appliances " for the period of twenty-five years after June 1, 1896. The ordinance provided for the immediate construction of such a plant, and that the plaintiff could purchase or use other similar plants then or thereafter erected in the city, but provided that any plant so purchased should be put in first-class condition, and that, if the one then in the city was purchased, certain extensions and improvements were to be made, and a forfeit paid if they were not made. The ordinance required the plant to be built and equipped according to certain specifications. It required the dynamos to be of the best direct current type, and that the company should furnish and operate four hundred or more arc lamps of the latest and best type, single carbon, high tension direct current, and of 2,000 candle power, for lighting streets. Section 3 of the ordinance was as follows: " Said company hereby agrees to furnish said city with all lights for its streets and public buildings, being all arc, incandescent lights and gas used, for and during the term for which this franchise is granted, and said city shall take all light used by said city, not less than four hundred arc, from said company during said term, except as provided for by existing ordinances upon the terms and conditions following, to wit." The price for lighting the streets was fixed for the first five years, and substantially the following provision made for the price thereafter: The price of such street lights to be adjusted each successive five years, and upon failure of the plaintiff and city to agree upon the price at the end of any five-year period, then the price should be the average price paid for similar lights by six cities in Iowa or Illinois of substantially the same population as Davenport, each party selecting three of said cities, or at the

option of the city the price should be fixed by arbitration, with the agreed condition that the price should never be chargeable greater than seventy dollars for moonlight schedule; the ordinance contained the following provisions also: " That the city reserves the right to inspect and pass upon the machinery and appurtenances used to furnish gas, electricity or steam, and at the commencement of each period of five years shall require that all such machinery and appurtenances are in good condition and of such approved designs as shall efficiently and properly produce gas and electric light of the required standard and power and give the city and the citizens thereof the advantages of all improvements in the production of gas and electricity. In the event of said company violating or failing to conform substantially to any of the conditions and requirements contained in this ordinance, after receiving notice and reasonable time therefor, then it shall, at the option of said city, forfeit to the city of Davenport all the rights and franchises acquired under this ordinance or pay the damages herein fixed or a reasonable penalty to be fixed by the city."

The plaintiff purchased the plant then being operated in the city, and thereafter in January, 1898, the city gave it the written notice of which the following is a part: " You are hereby notified that you shall within four months from the date of the service of this notice increase your present steam boiler plant by adding thereto approximately three hundred horse power. Second. Repair the foundation of the four hundred and fifty H. P. Allis-Corliss engine and strengthen the main line of counter shafting in your engine department; add to the dynamo department four one hundred and twenty-five light high tension arc machines to operate street lights. And have two hundred and fifty K. W. capacity dynamo for commercial power service. Construct and place a new switch board built according to the proper rules with regulating and controlling devices thereon, proper and sufficient for the purpose intended; and this you shall

in no wise omit to do within such time under a penalty of the forfeiture of all rights and privileges granted under the ordinance under which you are operating said electric light plant. You are hereby further notified that you shall, on or before six months from the date of the service of this notice, adjust all street lamps to operate at approximately fifty volts for each lamp. That you repair or replace about one hundred and fifty old lamps."

The plaintiff furnished the city the required light, for which it was paid according to the terms of the agreement until May, 1901. The city then notified the company that no adjustment of the price for lights for the five-year period beginning June 1, 1901, would be considered or arbitrated except upon the following conditions: " (a) Put all poles, cross-arms, pins, insulation and other appurtenances on the system of wiring for street lights in first-class condition; all live wire with defective insulation to be replaced with new wire, and each lamp suspension to be provided with special insulation and cross-arm or spreader. (b) The substitution of modern high efficiency, sixty-cycle, alternating current electric generators and a system of series alternating current inclosed arc lamps in place of the company's constant current generators and open arc lamps; all to the complete satisfaction of the city." To this demand the company replied that its system was in first-class condition, but, if the city would point out the alleged defects, it would remedy them at once; that the ordinance did not contemplate a change of the system of lighting; and refused to make the change. It also offered to fix the price for lights for the next five years as provided by the ordinance. Following the demand for a change of system, the city employed an expert electrician, who made a test of the merits of the various lights upon the defendant's streets, and reported, recommending the use of the inclosed arc lamp of the direct current type. The tests were made under the supervision of the committee on public lights, and thereafter said com-

mittee made the plaintiff a proposition for the use of direct current inclosed arc lamps at a price named for the next four years. The plaintiff made a counter proposition, agreeing to put in the inclosed arc lamps, provided a certain price was paid for the lighting. Thereafter the city council passed a resolution declaring the contract with the plaintiff null and void, and still later the plaintiff offered to accept the proposition made by the committee without qualification. This offer was refused, and on the second of November, 1901, this action was brought to restrain the defendant from proceeding under the resolution, and to compel it to arbitrate the price of lights for the five-year period. The defendant, in a cross-petition, alleged that the plaintiff had forfeited all of its rights under the ordinance, because it had failed to comply with its requirements for gas and steam mains, for the insulation of its wires, for replacing and keeping clean the globes, and for refusing to furnish an alternating current inclosed arc light system. The defendant also pleaded that the ordinance was *ultra vires*. After the trial was commenced, the plaintiff amended, alleging that, should the court find the provision of the ordinance relating to fixing the price of lights void, then it was entitled to a decree requiring the city to fix the rate for the five-year period. There was a decree for the plaintiff. The defendant appeals.—*Affirmed.*

*Henry Thuenen, Jr.*, and *L. M. Fisher,* for appellants.

*Lane & Waterman* and *E. M. Sharon,* for appellee.

SHERWIN, J.—The trial court found, and it is conceded by the appellee here, that the provision of the ordinance for fixing the price of lights after the 1st of June,

1. MANDATORY ORDER: demand.

1901, in case of a disagreement between the parties, was void. But the city was ordered to fix a fair and reasonable price for the service

for the five-year period following that date. At the time the amendment asking this order was filed, no demand therefor had been made upon the city, as required by section 4346 of the Code, but the city had long before that passed a resolution annulling the contract, and declaring that it would not thereafter pay for any lights furnished it thereunder. The city had also answered in this case, justifying its position, and insisting upon a decree sustaining its action in annulling the contract. It had not, however, until the filing of its last amendment, made any claim that the ordinance was *ultra vires,* or that the arbitration clause thereof was void. There was, then, no reason before this time why the plaintiff should ask for an order compelling the city to fix the rates; and when it became necessary by reason of the change in the issues no demand was required because of the previous action and attitude of the city. The plaintiff and the court were justified in believing that the city was sincere in the matter, and, if it was, it would have been an idle thing to make a formal demand for an adjustment of the price by arbitration, particularly in view of the fact that the plaintiff had already accepted the rates and terms proposed by the city. 19 Am. & Eng. Enc. Law (2d Ed.) 761, and cases cited.

Because this provision of the ordinance was void, it does not follow that no part of it can be sustained. It related solely to the method of fixing the price of the light, and did not inhere in the contract for the 2. ORDINANCES: partial invalidity. supply thereof so inseparably as to render an otherwise valid contract void. *Cedar Rapids Water Co. v. Cedar Rapids,* 118 Iowa, 234; *Illinois Trust & Sav. Bank v. The City of Arkansas City,* 76 Fed. Rep. 271 (22 C. C. A. 171, 34 L. R. A. 518.)

The principal contention relates to the power of the city to make an exclusive contract for lights for the period of twenty-five years. The right given the plaintiff to use the public ways of the city for its poles, wires, mains, and

other appurtenances was not exclusive, and therefore no question as to the power of the city to grant an exclusive franchise for the use of such way is before us. The city of Davenport has a special charter, which gives it the power to provide for lighting its streets, and the statutes in force at the time the contract was made gave all cities, including those with special charters, the same power. It is a familiar

3. CITIES: implied power.

rule that municipal corporations have all of the power necessarily implied from the powers expressly given to them, and, the power being given to provide light for its streets, necessarily implied the power to purchase the light of others, and to enter into a contract for such service. *Levis v. City of Newton* (C. C.) 75 Fed. Rep. 884. So far, then, as the naked power to contract for lights is concerned, it makes no difference whether it be implied or expressly given by statute.

It is contended, however, by the appellee, that such power was not only given by the statute, but that the statute went further, and gave the city the express power to contract

4. CITIES: power to contract for lights.

for lights for twenty-five years. Chapter seventy-eight, page eighty, of the Acts of the Fourteenth General Assembly, authorized all cities, towns, and villages to construct, maintain, and operate waterworks " for the purpose of supplying pure water to such corporations and the citizens thereof, for domestic and manufacturing purposes." It was also provided, " Or they may in their discretion authorize the construction, maintenance and operation of such works by individuals or corporations, on such terms as may be agreed upon." The act also authorized the municipality or persons or corporations constructing such works to go beyond the corporate limits for the purpose of procuring a supply of pure water, and gave the municipality jurisdiction over the territory so used, and over the stream or source of water supply, for five miles above the point from which the water was taken. The cities, towns, or villages were also given the power to " condemn

and appropriate so much private property as shall be necessary for the construction and operation of said waterworks." The purpose of the provisions of this act, to which we have already referred, was, without doubt, to enable cities and towns to secure water service for corporate and private use; and, if no further provision had been made therein, it is evident that the express power granted would by necessary implication have carried with it the power to contract for water for municipal purposes, otherwise one of the clearly expressed objects of the act would have been defeated.   But the act contained another clause, which was as follows: " Section 5. That whenever the right to build, maintain, and operate such works is granted to or conferred upon private individuals or incorporated companies by said cities, towns, and villages, they may make such grant to inure for a term of not more than twenty-five years, and authorize such individual or company, so constructing such works, to charge and collect from each and every person supplied by them with water, such water' rent or rents as may be agreed upon between said person or corporation so building said works, and said city, town, or village granting such right, and such cities, incorporated towns, and villages are hereby authorized and empowered to enter into a contract, with said individual or company constructing said works, to supply said city, town, or village with water for fire purposes, and for such other purposes as may be necessary for the health and safety of such municipal corporations, and to pay therefor such sum or sums as may be agreed upon between said contracting parties."

This expressly authorized the grant of the franchise for a period of twenty-five years, and expressly authorized the municipalities to contract with the person or corporation to whom it was granted for their own water supply.   If nothing further was intended by this latter provision than to confer the power to contract without reference to time, it was unnecessary, because of the power to be im-

plied from the other express provisions of the act. Individuals or corporations might be authorized to construct such works " on such terms " as were agreed upon, and the grant to them might be for a term of not more than twenty-five years. The act applied to all cities and towns regardless of population. In very many, if not in a majority, of them, the grant of a franchise followed by its use, while not exclusive in terms, would be so in fact, because of the expense of the plant and the limited demand for water. Small cities and towns were unwilling then, as they are now, to incur the expense of installing and operating a plant of this kind. But if they could give the right to do so to individuals or corporations, on such terms as they could agree upon, and thereby secure water for fire protection, and for such other purposes as were necessary, during the life of the franchise, they would acquire valuable rights without incurring the responsibility, financial and otherwise, of owning and operating such plants. We reach the conclusion that it was the legislative intent that contracts for the supply of water might be made covering the whole life of the franchise. And such was the holding, in effect, in *Grant v. The City of Davenport,* 36 Iowa, 396. We do not mean by this, however, that power was given to fix the rate to be paid for such entire period. We have discussed this act because it was substantially carried into the Code of 1873 as sections 471 to 479, inclusive, and the latter section made all of the provisions and powers conferred by said section applicable to cities acting under special charters.

But so far we have been dealing with waterworks only, and now consider the applicability of the law to the question before us. The Twenty-second General Assembly, by chapter eleven, page sixteen, of its Acts, amended the Code of 1873 as follows:

" Section 1. That section 471, Code of 1873, be and the same is hereby amended by inserting in the first line thereof after the word ' works ' the following words: ' or to

establish and maintain gas works or electric light plants with all the necessary poles, wires, burners and other requisites of said gas works or electric light plants.'

" Section 2.    That sections 472, 473, 474 and 475 of the Code of 1873, shall be held to apply to the establishment and maintenance of gas works and electric light plants as fully as they do to the erection of waterworks."

That this amendment was intended to and did give municipalities the power to erect or cause to be erected gas works or electric light plants, we do not doubt.   Nor do we doubt that it conferred upon them the power to deal with persons or corporations constructing such plants, precisely as they were authorized to deal with the owners of waterworks.   In fact, it seems to us that the express provision that sections 472 to 475, inclusive, " shall be held to apply to. the establishment and maintenance " of such plants " as fully as they do to the erection of waterworks," so clearly indicates this purpose that any other construction thereof would do extreme violence to its language.   Nor can any other construction be placed thereon without so limiting the power of cities and towns over the construction and control of such plants as to virtually nullify the entire act, and this would be contrary to every rule of construction.   We hold that the law in force when the contract was made expressly granted the power to contract for lights for a period of twenty-five years, and that, where such power is given, a contract for their supply for such period is valid.   *Des Moines v. Water Works Co.,* 95 Iowa, 348; *Creston Water Works Co. v. City of Creston,* 101 Iowa, 687; *Grant v. City of Davenport, supra; Walla Walla v. Walla Walla Water Co.,* 172 U. S. Rep. 1 (19 Sup. Ct. Rep. 77, 43 L. Ed. 341); *Freeport Water Co. v. Freeport,* 180 U. S. Rep. 587 (21 Sup. Ct. Rep. 493, 45 L. Ed. 679); *Danville v. Danville Water Co.,* 178 Ill. 299 (53 N. E. Rep. 118, 69 Am. St. Rep. 304); *Atlantic City Water Works Co. v. Atlantic City,* 48 N. J. Law 378 (6 Atl. Rep. 24).

We do not understand that the appellant seriously questions the validity of such a contract where the power to make it is expressly given, or when such power must necessarily **5. EXCLUSIVE** be implied. We have examined the author-**CONTRACT.** ities relied upon by the appellant to maintain its contention that a city may not enter into an exclusive contract for a long period of time, and find the decisions based upon the want of power either express or implied, and shall not take space to review them. It requires no argument or citation of authorities to sustain the proposition that, if the city had the power to make the contract for its supply of water, it would not be void because of exclusiveness, for all contracts for service of this kind must, in their very nature, be exclusive.

The right to forfeit the franchise was insisted upon because of the defective condition of the plant, gas mains, electric light wires, and because of the refusal to substitute the alternating system for the one then in use. As to the first of these complaints, we need only say that a careful reading of the evidence has satisfied us that there is no merit in it. It may be and probably is true that there were cases of imperfect insulation of the wires, and of broken or dirty globes, but these defects are incident to the operation of such plants, and seem to have been remedied whenever attention was called to the specific defect. Moreover, the ordinance provides for an action to compel the plaintiff to comply with these requirements, and the court would not be justified in declaring a forfeiture of the franchise which would inevitably greatly depreciate the value of the plaintiff's property without the most cogent reasons for so doing. The trial court found as a matter of fact that the alternating current inclosed arc lamp did not furnish as satisfactory light as the direct open arc lamp, and this finding we think was fully warranted by the great weight of the evidence, and we reach the same conclusion. By the terms of the ordinance the plaintiff agreed to give the city the " advantages

of all improvements in the production of gas and electricity,"
and it is certain that, if the proposed change would not be
an improvement over the old system, it could not be re-
quired.

But, in addition to the finding of the fact, which would
alone determine the question in favor of plaintiff, we do not
believe the ordinance contemplated such a change as was
6. ORDINANCES: demanded. It will be remembered that the
construction. plaintiff installed a plant complying with the
specification of the ordinance, and put in a large
amount of new machinery at great expense, which the
evidence shows would be rendered useless by the installation
of the alternating system. The ordinance provides that at
the commencement of each five-year period the city may re-
quire " that all such machinery and appurtenances are in
good condition and of such approved design as shall efficient-
ly and properly produce gas and electric light of the required
standard and power, and give the city and the citizens thereof
the advantages of all improvements in the production of gas
and electricity." The machinery and appurtenances sup-
plied under the required direction of the city were to be
inspected, and required to be in good condition, and of such
design as to furnish light of the " standard and power "
already designated, so that the city should have the advan-
tage of all the improvements calculated to increase the effi-
ciency of the system then in use. This construction is war-
ranted from a consideration of the entire ordinance and in
view of the fact that it is very improbable that either the
city or the plaintiff contemplated that demands might be
made at the beginning of each five-year period which would
require an entire change of machinery and appurtenances,
no matter how great the expense.

The decree below was in all respects right, and it is
AFFIRMED.