WALTER G. PORTER et al., Appellants, v. BOARD OF SUPERVISORS OF MONONA COUNTY et al., Appellees.

No. 46953.

SEPTEMBER 16, 1947.

REHEARING DENIED DECEMBER 19, 1947.

Underhill & Underhill, of Onawa, for appellants.

Prichard & Prichard and John D. Beardsley, all of Onawa, for appellees.

HALE, J.—This is an action in equity by plaintiffs who are owners of land outside of the Kennebec Drainage District in Monona County, Iowa, seeking to enjoin the Board of Supervisors and the Sheriff of Monona County from condemning a right of way for the Kennebec drainage ditch through plaintiffs' land, alleging it would be unfeasible, would result in irrevocable damages to plaintiffs, for which they would have no plain, speedy, or adequate remedy at law. Resistance was made by defendants as hereafter stated.

The Kennebec Drainage District was established by the Monona County Board of Supervisors November 1, 1945. Plaintiffs' land is not included in the Kennebec district. It consists of a tract of 80 acres running north and south, being the West Half of the Northwest Quarter of Section 24, Township 84, Range 45. It lies south and a little to the west of the west line of the district. The land sought to be taken is a tract of approximately 2.84 acres, 1,800 feet in length, 60 feet in width, running northeast and southwest, and extending from a point near the northeast corner of plaintiffs' land, and thence southwest to the Monona-Harrison ditch.

Proceedings for the condemnation of this outlet across plaintiffs' land were instituted on April 1, 1946. Notice of condemnation was served on plaintiffs fixing April 15, 1946, as the time of the appraisement. On April 5, 1946, however, plaintiffs filed a petition in equity asking that the condemnation be enjoined, stating in their petition (1) ownership (2) the application for condemnation and (3) alleging that such condemnation is sought to secure a right of way for a canal outlet for the Kennebec Drainage District so that it may discharge and outlet

its waters into the established Monona-Harrison drainage ditch.

Paragraph 3 of the petition proceeds to state that such purpose is not for a work of public utility inasmuch as defendants are attempting to conduct drainage waters westerly across plaintiffs' lands in an unnatural and unfeasible manner, without regard to competent engineering principles and practices, and without there being a public necessity therefor, and solely as a matter of convenience and to please certain owners of lands to the north and east of plaintiffs' land, and to avoid controversy with certain owners of land to the south and east of plaintiffs' said lands.

Paragraph 4 alleges that if defendants were allowed to condemn said proposed right of way against said lands the same would be illegal and inequitable and without any right and would work irrevocable hardship and damage upon the plaintiffs, for which the plaintiffs would have no plain, speedy, or adequate remedy at law. In the remainder of their petition they ask for equitable relief by injunction.

The petition was resisted by the defendants who alleged that the Kennebec Drainage District was duly established according to law on plans and specifications of the engineer, approved and confirmed by the Board of Supervisors of Monona County, and that they could not now be assailed; and further resisting, that such proceedings were legal and proper and that plaintiffs had an adequate remedy at law. Defendants further alleged that there were no equitable grounds for relief and plaintiffs will receive such damages and redress as they are entitled to.

It will be observed that nowhere in the first three paragraphs of plaintiffs' petition is there any claim that the procedure was contrary to law. Only in paragraph 4 is it alleged that the condemnation would be illegal and inequitable. Nowhere is it specifically pleaded or claimed that the procedure is incorrect. There was a hearing on plaintiffs' petition for injunction on April 11, and on April 15, 1946, the court entered its judgment and decree finding that the regularity of the proceedings to establish the drainage ditch, or the condemnation, were not challenged by plaintiffs, and the pleadings

and evidence were confined solely to the question of feasibility.

The court determined that to hold for the plaintiffs it must find:

"(1) That the Court under the existing record has authority to intercede and substitute its judgment on the feasibility of the project for the judgment of the engineer in charge and the Ditch Trustees. (2) That lack of feasibility of the proposed canal has been established by evidence. (3) That the plaintiffs have not a complete and adequate remedy at law."

The court stated that it failed to find for the plaintiffs on any of the propositions above set out and dismissed plaintiffs' petition.

We are unable to find in the pleadings or proceedings in the district court that the proper form of procedure is otherwise challenged than is stated. It would be of no practical value to set out, in detail, the evidence submitted on the trial. Testimony was offered both for and against the feasibility of the route selected for the outlet. We find it unnecessary to consider or rule upon this question.

Plaintiffs-appellants challenge the decision of the court: First, on the ground that "the Court attempted to make a determination of the issues without any finding as to whether defendants' procedure in establishing a new drainage district, which did not include plaintiffs' land situated adjacent-thereto and of which no notice or opportunity to be heard was given the plaintiffs, and thereafter attempting to construct said new ditch on plaintiffs' lands by invoking eminent domain, was legal and equitable, and therefore there was no complete adjudication of the issues by the Court." Second, the court erroneously found that it did not have the authority to pass upon the feasibility of the proposed route of the outlet sought to be condemned for the new Kennebec drainage ditch, and then inconsistently and erroneously held that plaintiffs had failed to establish lack of feasibility of the proposed Kennebec ditch outlet. Third, the court was in error in finding plaintiffs had complete and adequate remedy at law.

I. It is not necessary to consider or rule upon the first and second propositions urged by plaintiffs for reversal. The parties stated, in argument, that there is an appeal from the condemnation now pending in the district court. We therefore consider at this time the question whether or not injunction was the proper procedure.

Since we hold the power of the Board to inaugurate condemnation proceedings is not questioned under the record, we have the one question to answer: May equity enjoin the proceedings on the ground the "purpose is not for a work of public utility," the proposed outlet is not feasible and the proposed action of the Board is "without regard to competent engineering principles and practices"?

It is to be remembered this is not an appeal from a decision in condemnation proceedings but a suit to enjoin condemnation proceedings. The invoked jurisdiction of the district court was not appellate but original and equitable. In order to succeed, plaintiffs had to show some equitable ground to justify equitable interference with pending proceedings.

Even in appeals from condemnation judgments it is conceded that determination of the necessity for taking property for public use is a legislative and not a judicial function. Bennett v. City of Marion, 106 Iowa 628, 630, 76 N. W. 844; Barrett v. Kemp, 91 Iowa 296, 59 N. W. 76; Brush v. Incorporated Town of Liscomb, 202 Iowa 1155, 211 N. W. 856; Denny v. Des Moines County, 143 Iowa 466, 121 N. W. 1066. And it is held the discretion of the condemning body may not on appeal be reviewed by the court when such body acts within the authority given and its determination is fairly made without fraud or oppression. Brush v. Incorporated Town of Liscomb, supra; Chicago G. W. Ry. Co. v. City of Mason City, 155 Iowa 99, 135 N. W. 9. See, also, Temple v. Hamilton County, 134 Iowa 706, 112 N. W. 174. The court in such cases, however, will act to prevent abuse of power or its exercise beyond the requirements of public use. Bennett v. City of Marion, supra; In re Condemnation of Certain Land, 230 Iowa 1069, 300 N. W. 287.

In all such cases the court acts in an appellate capacity in its relation to the condemnation proceedings, its power to review being circumscribed only by the presumption in favor of the action of the condemning body in exercising its legislative discretion.

But before a court of equity may enjoin such proceedings it must be made to appear that the condemning board or body is acting illegally or beyond its jurisdiction. Something more than mere error must be shown—some equitable ground such as fraud, illegality, or want of power. See Minear v. Plowman, 197 Iowa 1188, 197 N. W. 67; Long v. State Highway Comm., 204 Iowa 376, 213 N. W. 532; Hoover v. Iowa State Highway Comm., 207 Iowa 56, 222 N. W. 438; Forbes v. Delashmutt, 68 Iowa 164, 168, 26 N. W. 56.

"In any case, the exercise of the power of eminent domain by a governmental body may not be stayed or interfered with by injunction in the absence of fraud, abuse of discretion, or other gross impropriety, or unless the owner is in some way illegally deprived of his rights in violation of the constitutional or statutory provisions governing the exercise of the power of eminent domain." 30 C. J. S., Eminent Domain, section 401.

We find here no ground of equitable jurisdiction that would justify judicial review of the defendant Board's exercise of discretion in determining the question of feasibility and public utility. In the state of the record as we find it, whatever remedy plaintiffs may have is available to them in the condemnation proceedings.

II. We call attention also to the fact that it was stated in oral argument, and not denied, that the construction had already taken place and that the canal or ditch was in operation. There was no stay of proceedings nor application in this court for an order to stay construction. Under these circumstances the construction of the ditch became an established fact before the case was submitted to us for decision. See Welton v. Iowa State Highway Comm., 208 Iowa 1401, 227 N. W. 332.

For the reasons stated the holding of the district court in denying the injunction is therefore affirmed.—Affirmed.

OLIVER, C. J., and SMITH and MANTZ, JJ., concur.

GARFIELD, J., concurs in result.

MULRONEY, BLISS, and HAYS, JJ., dissent.

GARFIELD, J., joins in Division II of dissent.

MULRONEY, J. (dissenting)—I cannot concur in the majority opinion in this case.

The record shows that on April 1, 1946, the Board of Supervisors of Monona County, acting for the Kennebec Drainage District, filed with the sheriff an application to condemn a strip of land 1,800 feet in length across plaintiffs' land to secure "right-of-way to afford a canal outlet for the Kennebec Drainage District so that it may discharge and outlet its waters into the established Monona-Harrison Drainage Ditch." A commission was appointed and notice was served on plaintiffs that the commissioners would view the premises on April 15, 1946, and proceed to appraise the damages.

On April 5, 1946, plaintiffs filed their petition in the district court of Monona county seeking a temporary restraining order restraining defendants, the Board of Supervisors of Monona County, from proceeding with any action for condemnation of plaintiffs' land and from going on the premises in relation to any ditching, and that upon final hearing the order be made final and perpetual, and for general equitable relief and for costs. The petition recited the pending condemnation proceedings and alleged in paragraph 3 that the purpose was not for a public utility, inasmuch as the defendants were attempting to conduct drainage across plaintiffs' land in an unnatural and unfeasible manner and contrary to competent engineering principles. In paragraph 4 the petition alleged:

"That if defendants were allowed to condemn such proposed right-of-way across plaintiffs' said lands, the same would be illegal and inequitable and without any right, and would work irrevocable hardship and damage upon the plaintiffs, for

which the plaintiffs would have no plain, speedy or adequate remedy at law.''

On April 11, 1946, defendants filed their resistance, in which they alleged that the Kennebec Drainage District is duly organized under the laws of Iowa and ''the plaintiffs' lands are not included in said district.'' In paragraph 3 of the resistance defendants alleged:

''That the Kennebec Drainage District is entitled to an outlet for its waters and in the condemnation proceedings complained of by these plaintiffs, said district is seeking in a legal and orderly manner to acquire such outlet, and the plaintiffs will receive such damages and redress as they may be entitled to in said condemnation proceedings and no equitable grounds have been shown for interference by the court.''

The prayer was that the plaintiffs' petition be denied.

Trial was had on April 11, 1946, and after hearing testimony—largely as to the lack of feasibility in the proposed ditch —the trial court, on April 15th, rendered judgment and decree in favor of defendants. In the judgment and decree the trial court recited:

''The regularity of the proceedings to establish the drainage ditch or the condemnation are not challenged by plaintiffs, the pleadings and evidence being confined solely to the question of feasibility.''

Plaintiffs' first proposition relied upon for reversal is a complaint that the trial court attempted to make a determination of the issues without any finding as to whether defendants could legally invoke eminent domain, and they argue in their first brief point that a drainage district's attempt to take right of way for a proposed ditch across land outside of the district by eminent domain is contrary to the ditching procedure contemplated in the Iowa statutes for the establishment of drainage districts and is unlawful and inequitable. To this proposition defendants answer (1) that the legality of the right to institute the (condemnation) proceedings or the procedure followed in the condemnation proceedings were not assailed by the

plaintiffs, and (2) that the proceedings for the condemnation of the land belonging to the plaintiffs were instituted under section 471.4(3), of the 1946 Code of Iowa, and the proceedings had as outlined in chapter 472 of the 1946 Code of Iowa.

I. It would seem that the legal issue as to the right of the drainage district to acquire, by eminent domain, a right of way across land outside the district for the purpose of constructing an outlet ditch was raised by the pleadings. Paragraph 4 of the petition alleged in effect that it would be "illegal" to allow the defendants to condemn and "without any right." Defendants' resistance contained a joinder of the issue when they pleaded that in the condemnation proceedings they were seeking in a "legal and orderly manner to acquire such outlet."

It is true the trial court in its judgment and decree stated that the "regularity of the proceedings" to establish the condemnation are not challenged by plaintiffs, and that the pleadings and evidence were confined solely to the issue of feasibility. It might have meant the regularity of the proceedings were unchallenged in the sense that there was no allegation or proof that they were not in accordance with the statutes prescribing procedure under power of eminent domain (chapter 472, Code of 1946). But it seems clear that the legal right to condemn was challenged and defendants met the assault by asserting the district was "entitled" to an outlet and the condemnation proceedings was its "legal" method of obtaining an outlet. I think the legal issue was raised by the pleadings. It needed no testimony to develop the issue. Defendants pleaded that plaintiffs' lands were not in the district.

II. Defendants argue in effect that if the issue is present the proceedings for the condemnation were instituted under section 471.4(3), Code of 1946, and the proceedings followed chapter 472, Code of 1946. Section 471.4, provides in part as follows:

"The right to take private property for public use is hereby conferred: * * * 3. *Corporations or persons in certain cases.* Upon any corporation or person desiring to construct a canal,

road, or bridge as a work of public utility, but the land taken shall not exceed one hundred feet in width.''

This statute has been a part of the laws of Iowa, in almost its present wording, since the Code of 1851 (section 759). It was the law of Iowa long before the statutes providing for the creation of drainage districts was passed. Obviously, here the word ''canal'' is used in its meaning as a public highway. 6 Words and Phrases, Perm. Ed., 31. Moreover, the drainage district is neither a corporation nor person within the meaning of the above law. ''It is a legislative creation which has no rights or powers other than those found in the statutes which gave and sustain its life.'' Board of Trustees v. Board of Supervisors, 232 Iowa 1098, 1100, 5 N. W. 2d 189, 191. But the strongest argument against the contention that the legislature intended the above statute as granting eminent domain rights to a drainage district is to be found in the history of the drainage statutes.

In 1909 the Thirty-third General Assembly enacted a law (chapter 122, Laws of the Thirty-third General Assembly) specifically providing for the acquirement of land by condemnation proceedings outside of an established drainage district or county for the purpose of securing proper outlet. The act provides for the condemnation of real estate in an adjoining county to secure the necessary outlet if, ''in the judgment of the board of supervisors, expense will be saved such district by avoiding joint proceedings with such adjoining county,'' and the act further provides for such condemnation for an outlet ''whenever after establishment of any district it is found necessary to extend the main ditch beyond the limits of such district as established, in order to secure proper outlet therefor.'' This act appeared in the 1913 Code Supplement as section 1989-a55.

The Fortieth Extra General Assembly passed an act that amended, revised, and recodified the drainage law of Iowa. (Acts, unpublished, Fortieth Extra General Assembly, House File 185.) In section 128 of this act the provision for condemnation of land in another county, and required for an outlet, was retained (it is now 455.16, Code, 1946) but there

is nothing in this new law granting to a drainage district the right to acquire land for an outlet outside the district, but within the county, by means of condemnation. The effect of the law in the Fortieth Extra General Assembly was to repeal the grant of eminent domain rights previously granted by the Thirty-third General Assembly. Nor does it appear necessary that a drainage district have such eminent domain rights in order to enable the district to obtain right of way for an outlet ditch. An examination of the drainage district statutes as they appear in chapter 455, Code, 1946, shows that the petition and engineer's report should show a plan that includes "the starting point, route, and terminus" of the ditch. Sections 455.9 and 455.18. The board's approval of any plan is in the first instance only tentative (455.20), for upon further investigation after notice to the landowners in the planned district, and hearing thereon, the board can modify the plan or adopt a new one serving notice of an adjourned hearing on "new parties rendered necessary by any modification or change of plans." (Section 455.28.) Even after the district is established it would seem that a new district could probably be established that would cover the old district and include additional lands deemed necessary. (Section 455.133.) From a study of the drainage statutes as they appear in chapter 455, it appears clear that the legislature intended that the whole course of the ditch from its source to its outlet was to be included in the drainage district. In section 455.38 it is provided that the improvement be divided into sections "numbering the same consecutively from outlets to the beginning." And all of the statutes granting rights to acquire additional land provide that it shall be done in the same manner as the original establishment. There are ample provisions for the assessment of damages by an appraisal board, consisting of an engineer and two freeholders of the county, not interested in, or related to, any person in the proposed improvement (section 455.30); with a right of appeal to the board of supervisors (455.32); with payment of or security for the award of damages (455.37); and with the right of appeal to the district court from the board's order "fixing the amount of compensation for lands taken for right

of way," where the trial is by ordinary proceedings (455.101).

III. Unauthorized condemnation proceedings can be the subject of an injunction action. Hoover v. Iowa State Highway Comm., 207 Iowa 56, 222 N. W. 438; Munn v. Independent Sch. Dist., 188 Iowa 757, 176 N. W. 811. I feel that the issue of the defendants' statutory authority was properly raised and joined by the parties. I would hold the defendants had no authority of eminent domain. I would grant the relief prayed for and reverse and remand the case for a decree restraining defendants from further condemnation proceedings, without prejudice to their rights to institute proceedings under the provisions of chapter 455 to obtain any right of way for outlet purposes.

BLISS and HAYS, JJ., join in this dissent.

GARFIELD, J., joins in Division II of this dissent.