DALE MAPES et ux., appellees and cross-appellants, v. MADISON COUNTY et al., appellants and cross-appellees.

No. 50194.

(Reported in 107 N.W.2d 62)

JANUARY 11, 1961.

Emery L. Goodenberger, County Attorney of Madison County, and Gordon K. Darling, both of Winterset, for appellants and cross-appellees.

Webster & Frederick, of Winterset, for appellees and cross-appellants.

PETERSON, J.—This is a mandamus action against Madison County and its Board of Supervisors. Defendant county decided in 1959 to convert a country road, running past plaintiffs' farm, into a farm-to-market road. They needed a tract of 1.88 acres to widen the road, which was located in the corner of plaintiffs' 160-acre farm. Agreement was not made as to purchase, and petition was filed for condemnation. On May 14, 1959, the sheriff's jury awarded plaintiffs $825. Plaintiffs did not appeal from the award. The road was widened, raised 14.5 feet, and completed in the summer of 1959.

Plaintiffs claim damages by reason of (a) defective erection of access road; (b) loss of light, air and view through the raising of the road; (c) creating a pool of stagnant water abutting their house and farmyard; (d) building the road in such a manner that the sides would slide into plaintiffs' property, and not protecting plaintiffs by lateral support.

The trial court denied the writ as to damages for access road, light, air, view, and concentration of water. The writ was granted for condemnation as to damages for failing to provide lateral support.

Defendants appealed, first, for failure to dismiss petition in view of no evidence of demand on the part of plaintiffs as required by section 661.9, 1958 Code of Iowa, and second, for allowance of writ for failure to furnish lateral support.

Plaintiffs cross-appealed as to trial court's denial of the writ as to damages caused by defective access road, loss of light, air and view, and wrongful concentration of water near plaintiffs' buildings.

█ Mandamus will lie to compel condemnation proceedings where there has been taking of private property for public use without compensating the owner. Where prior condemnation did not acquire the rights as to property taken later, the proper remedy also is mandamus to compel further condemnation. Dawson v. McKinnon, 226 Iowa 756, 770, 285 N.W. 258; Baird v. Johnston, 230 Iowa 161, 164, 297 N.W. 315, 316; Anderlik v. Iowa State Highway Commission, 240 Iowa 919, 38 N.W.2d 605, 609; Rhodes v. Iowa State Highway Commission, 250 Iowa 416, 94 N.W.2d 97.

I. Appellants' first proposition is that the case and the appeal should be summarily dismissed because plaintiffs did not prove they had demanded performance as provided in section 661.9 of the Code. The pertinent provisions of the section are: "The plaintiff in such action shall state his claim * * * and that performance thereof has been demanded by him, and refused or neglected * * *." The record discloses that plaintiffs failed to show affirmatively they had made such demand.

After the argument was commenced, but prior to the final submission of the case to the court, plaintiffs filed motion to reopen the case for submission of testimony as to demand. The court overruled the motion, stating it had been filed too late.

Plaintiffs then proffered testimony by one of the counsel for plaintiffs, that he called on the members of the Board of Supervisors sometime between the dates of June 15 and the commencement of this action and requested the Board to institute condemnation proceedings for the right of access and for lack of

lateral support, which they refused to do. While a trial court has wide discretion as to such a motion, since this was an action in equity, triable to the court, it is our opinion that the court should have admitted the testimony. However, in view of the final decision of the trial court as to the question involved, the ruling became immaterial.

If the attitude and conduct of the defendant prior to an action for a writ of mandamus has clearly manifested that there was no intention to perform the acts demanded, the demand is a meaningless gesture and is not necessary. Davenport Gas & Electric Co. v. City of Davenport, 124 Iowa 22, 27, 98 N.W. 892, 895; 34 Am. Jur., Mandamus, section 80, page 869.

Appellants cite several Iowa cases where this court has held that the statutory requirement for specific demand is essential in order to maintain a mandamus action. However, in each of such cases there were no extenuating circumstances permitting a waiver of the demand.

The only Iowa case which has heretofore passed directly on the question, where such circumstances exist, is the case of Davenport Gas & Electric Co. v. City of Davenport, supra, where it is stated: "* * * no demand was required because of the previous action and attitude of the city. The plaintiff and the court were justified in believing that the city was sincere in the matter, and, if it was, it would have been an idle thing to make a formal demand * * *."

Appellants quote from 34 Am. Jur., Mandamus, section 80, page 869, the concluding clause of which quotation is as follows: "* * * and it must appear that he refused to comply with such demand, either in direct terms or *by conduct from which a refusal can be conclusively inferred.*" (Emphasis ours.)

Appellees quote from 34 Am. Jur., Mandamus, section 80, page 870, the concluding clause being as follows: "* * * a positive demand and refusal may be dispensed with when the course of conduct of the defendant clearly shows a manifest intention not to perform the public duty."

In its opinion the trial court clearly and correctly stated the situation in the case at bar: "The defendants have fought and resisted this case upon the general basis that they were not compelled to pay any additional damages or to do anything fur-

ther about the situation, and this court is justified in assuming that this is the attitude of the defendants and that it would have been a useless thing for the plaintiffs to make a formal demand."

II. One of the allegations in plaintiffs' petition is damage suffered by them because of the absence of lateral support. In the building of the new roadway and raising the traveled portion thereof 14.5 feet above the old roadway, defendants performed the work in such manner that after every rain a portion of the fill would slide down and move over on plaintiffs' property. In the rebuilding of their fence, after 1.88 acres was taken under condemnation for the new roadway, plaintiffs moved the fence in on their own property at a width running from 1 foot to 14 feet, and 300 feet in length. The built up roadway had already started to slide beyond the right-of-way line before the fence was built. Afterwards plaintiffs' ground was covered, and the dirt piled up against the fence.

The right to lateral support is a proprietary right which the owner does not part with when adjacent land is acquired for highway purposes. Jamison v. Myrtle Lodge, 158 Iowa 264, 139 N.W. 547; Covell v. Sioux City, 224 Iowa 1060, 277 N.W. 447; Liddick v. City of Council Bluffs, 232 Iowa 197, 5 N.W.2d 361; Hathaway v. Sioux City, 244 Iowa 508, 57 N.W.2d 228; 18 Am. Jur., Eminent Domain, section 369, page 1011; 25 Am. Jur., Highways, section 154; 29 C. J. S., Eminent Domain, sections 121, 122; 64 C. J. S., Municipal Corporations, sections 1701, 1703.

When the damage to the property owner arises by reason of defects or negligence in connection with the building of a new road, the damage suffered by the property owner is not included in the original condemnation allowance. Such damage was not within the contemplation of the sheriff's jury. The property owner and the jury at the time of fixing the condemnation allowance had a right to assume that the road improvement would be performed correctly and in accordance with the engineer's plans and specifications.

The principle is well stated in 18 Am. Jur., supra: "Where, however, there is a loss that neither party had any reason to anticipate, and the possibility of which, if suggested, would have been rejected as speculative and conjectural in the

condemnation proceedings, it has been held that such loss may be compensated in damages in a subsequent action."

The trial court held that writ of mandamus should issue for condemnation in favor of plaintiffs to compensate for the destruction of lateral support. We approve this ruling.

III. Plaintiffs, as cross-appellants, assign a proposition as to a water element of damage to be included in the writ, which was denied by the trial court. A ditch or depression was left in the right of way when the new road was constructed, in which surface water accumulated without sufficient means of outlet. It was in the immediate proximity of plaintiffs' house and other buildings. The water was stationary, and continued to stand in the ditch created by the removal of dirt with which to build the roadway, until it became stagnant. Mr. Mapes, plaintiff, testified: "No water stood between our house and the old road. No pools of water stood there stagnant throughout the summer. * * * That is between our house and the new road and the water has been there since they built the road." Mr. Gene Hardy, the Deputy County Engineer, and the only witness for defendants, testified: "I have observed water standing there most of the summer after the road and drive were constructed. I am quite sure there was a means for the water to drain away but the water couldn't get to the means, and it wouldn't drain away."

The trial court recognized the damage, but held it was not a subject for condemnation. If not corrected by defendants, an action in equity will provide relief. We approve this ruling.

IV. When the sheriff's jury met on the premises to assess the damages, plaintiff Mr. Mapes and assistant County Engineer Gene Hardy met with them. The exact location of the access road from plaintiffs' house and barnyard to the new road was not marked on the blueprints.

The old road was about four feet above plaintiffs' property, and the access road ran direct from the house and barnyard to the road, with very little raise in elevation. It ran about 60 feet on plaintiffs' property, and then across the right of way to the traveled portion of the road.

It was proposed that the new grade be raised 14.5 feet in front of plaintiffs' buildings. There was some misunderstanding

about this at the meeting. Mr. Mapes and at least one member of the jury thought it would only be raised five or six feet in front of plaintiffs' house. The raise was clearly shown in the blueprints, and, as far as the sheriff's jury was concerned, this would control the matter.

The only significance of the misunderstanding was that plaintiffs now claim the new road, 14.5 feet higher, creates a damaging access road problem for them, and affects light, air and view.

There was some discussion of the county starting the access road near the house, and building it up on a gradual slope direct to the new road, but plaintiffs demanded $8000 for permitting the road to start 60 feet into their house and barnyard. Since the ground taken would only be about one tenth of an acre, and the raise in the road would only cause slight incidental damage, the county properly could not agree to such a figure. The defendants then ran the access road parallel with the new road, on the right of way, connecting with plaintiffs' old road about 60 feet from the house. In order to prevent an unduly steep road, it was run 290 feet along the right of way, with an incline of about six feet per 100 feet of distance.

Plaintiffs' only definite and tangible complaint is that when they send or receive stock it is difficult, but not impossible, to turn from the traveled portion of the highway onto the access road with a stock truck.

Plaintiffs also complain in the pleadings as to loss of air, light and view by reason of the raise of the roadway. The claim to loss of light and air finds no support in the testimony. Mr. Mapes, plaintiff, testified: "I really can't say that my air and light were interfered with in any way around my buildings or my house. If it is, it is slight. I think I get as much air and ventilation and light around my buildings as I ever did."

The interference as to view pertains only to one matter, which we do not deem of sufficient importance to justify inclusion in the writ. Before the new road was built, plaintiffs' children could stand at a window in the house and see the school bus as it turned a corner to the south one mile away, and then go out to the road by the time it arrived. Now they must closely

gauge its time of arrival and be ready on the road to meet it at arrival time.

The access road, light, air, and view matters were all considered and included in the original condemnation allowance, from which plaintiffs did not appeal.

The jury allowed plaintiffs $825. Defendants took 1.88 acres. The maximum land value shown in the testimony was $150 per acre, which means the actual value of the land taken was $282. This left $543 for any miscellaneous damage suffered as to any matters under discussion, consideration or contemplation when the jury met.

We considered a similar situation recently in Rhodes v. Iowa State Highway Commission, 250 Iowa 416, 420, 94 N.W.2d 97, 100.

The property owner entered into agreement with the Highway Commission for acquisition of certain land, and removal by the landowner of buildings to a point 10 feet south of the new roadway line. The owner moved the buildings to a point designated by highway employees. This point was wrong, leaving the buildings protruding on the highway a short distance. It became necessary to move them again, and the property owner attempted to have the agreement reformed to cover the additional expense. This court denied such recovery, stating: "* * * it is a fair assumption to assume that the agreed compensation includes all the detrimental elements incidental to the taking. * * * the case * * * must be governed by Porter v. Board of Supervisors, 238 Iowa 1399, 28 N.W.2d 841, which holds that before governmental functions may be enjoined something more than mere error must be shown—some equitable grounds such as fraud, illegality or want of authority."

The trial court was correct in denying the writ as to a new condemnation covering access road, light, air and view.

The decree of the trial court is affirmed on defendants' appeal, and on plaintiffs' cross-appeal.—Affirmed on appellants' appeal; affirmed on appellees' cross-appeal.

All JUSTICES concur.