HARRISON–POTTAWATTAMIE DRAIN-AGE DISTRICT NO. 1 by E. M. Osborn, O. G. Danker, and F. W. Myers, Trustees for said District, Appellees,

v.

The STATE of Iowa, the Iowa State High-way Commission, and Capitol Construc-tion Company, Appellants.

No. 52706.

Supreme Court of Iowa.

March 5, 1968.

Richard C. Turner, Atty. Gen., L. Michael McGrane, Asst. Atty. Gen., and Leo Ballard, Des Moines, for appellants.

Acrea & Pearson, Missouri Valley, for appellees.

MASON, Justice.

The State Highway Commission appeals from a decree enjoining it from proceeding with construction of a bridge on U. S. Highway 30 where it crosses Allen Creek drainage ditch, and ordering removal of piers from the creek.

Plaintiff drainage district consists of certain districts in Harrison and Pottawattamie Counties, including Allen Creek drainage ditch. The Allen ditch consists of several tributaries with sources near the north Harrison County line running in a southwesterly direction out of the hills to the Missouri river flood plains. At this point the Steer Creek and Little Allen join and, with other ditches, drain tubes and lateral tiles which empty into the Allen Creek, constitute the Allen ditch.

The portion which has been constructed and maintained by plaintiff for many years is approximately 18 miles long, runs in a general southerly direction to the Missouri river with a fall of slightly more than one foot per mile. The fall from the source of the contributing ditches to the point where the foothills meet the flood plains, a distance from five to seven miles, is about 325 feet.

A number of bridges cross the ditch to accommodate roads along the course of the flood plain. Over the years these had been a source of great trouble, catching trees, ice and other debris. At time of trial every bridge had been either raised, widened or both, or after having been torn out by floods, not replaced. Every span crossing the ditch was then a clear span bridge from 50 to 80 feet without piers or other obstructions in the channel.

The bridge formerly accommodating Highway 30 was a 70-foot pony truss type bridge with no piers or obstructions in the channel. Its replacement, being built at time of trial, provided for two rows of concrete piers, each 16 inches in diameter, with five piers in each row. The rows were to be approximately 26 feet apart, center to center, in the channel of the Allen ditch with the bridge floor to be raised 2½ feet.

I. The construction of the bridge to accommodate Highway 30 had been commenced when plaintiff brought this action against the State, the Highway Commission and Capitol Construction Company seeking to enjoin them from proceeding with its construction. By amendment plaintiff sought to enjoin the highway commission from proceeding with letting of contracts for construction of twin bridges at a future date across Allen Creek to accommodate Interstate Highway I-29.

In both the original petition and amendment, seeking temporary and permanent injunctions, plaintiff alleged the construction in progress and proposed construction of the twin bridges would constitute obstructions of the drainage ditch which would cause ice, trees and other debris to become lodged in the ditch, cause silt to be deposited there, all of which would be detrimental to the district and cause the channel to become filled with silt, creating danger of serious damage to the improvements as well as a threat of substantial damage to the surrounding farmland in the event the obstructions complained of caused or contributed to floods.

In its separate answer defendant highway commission admitted the type of construction, but denied it was improper, illegal or would constitute a hazard to the drainage ditch and surrounding land or create a danger of serious injury to plaintiff's improvement. It affirmatively alleged plaintiff had a speedy and adequate remedy at law and so could not maintain this action unless fraud or mistake on the part of defendant was shown. This defendant further alleged it had secured a permit to establish the bridge from the Iowa Natural Resources Council and the law does not require submission of proposed improvements to this plaintiff.

After hearing on the temporary injunction it was agreed by all parties that the hearing be adjourned and the matter set for trial on the merits October 18, 1966. It was stipulated all evidence previously taken on the matter of the temporary injunction, including exhibits, should be considered in connection with the trial on the merits with leave to call any witness for direct or

cross-examination. No temporary injunction was issued.

II. The issues presented to the trial court were whether plaintiff could enjoin further construction by the highway commission of the bridge according to the plans and specifications set out in the contract awarded to Capitol Construction Company and whether plaintiff could compel, by mandatory injunction, removal of the bridge as constructed.

At the trial after the parties had rested, defendant commission moved for dismissal of the action. The court sustained the motion as to the relief sought in the amendment relative to the granting of an injunction preventing the highway commission from proceeding with the letting of contracts for the construction of the I–29 twin bridges, but overruled the rest of the motion.

The trial court was of the opinion plaintiff should be granted no relief against defendant Capitol Construction Company which had been awarded the contract by the commission for construction of the bridge, it being merely an agent carrying out the contract with the commission.

At the point where Highway 30 crosses it, Allen Creek has a width at the bottom of the channel of approximately 25 feet with a slope on the west bank of approximately 2:1 and on the east bank of approximately 1:1. The width of the channel at the top of the dike is approximately 70 feet.

The soil in the upper reaches where the slope is greatest is very porous and subject to washing, resulting in a great deal of silt, as well as many trees and other debris, being washed into the stream and brought down at great speed from the hills, causing the stream to choke and overflow in the more level portions of the ditch.

Witnesses for both sides testified the construction of the bridge with piers in the channel would create an obstruction and hazard to the operation and maintenance of Allen ditch, even though the new bridge floor was to be raised. Defendant's engineers freely admitted the piers would catch trees and other debris when the ditch was up, and would tend to slow the flow of water, which would cause silt to be deposited in the stream, all of which would be an obstruction and a hazard.

The evidence is undisputed that during the times of spring run-offs, or heavy rains a great amount of trash, including trees with a width or span of more than 26 feet, frequently washes down the ditch and in many instances trees and debris became lodged at bridges which were larger and wider and with greater capacity than the bridge being constructed at the Highway 30 crossing.

It was also established that approximately 28,500 acres were drained by the Steer and Allen Creek ditches and their tributaries above the flood plain and approximately 20,000 acres of level, flat flood plain land were drained by the ditch between Highway 30 and the foothills.

Because the land in the flood plain through which the ditch flows is low and flat, the depositing of silt in the channel would clog and cover the drainage tubes and lateral tile drains emptying into the ditch, destroying the drainage provided by the ditch.

III. The trial court concluded the building of the bridge in question with pilings placed in the channel constituted an obstruction and would cause a grave danger of floods and other hazards to plaintiff district and the surrounding lands; defendant's acts constituted a violation of chapter 455, Code, 1966; that defendant's securing a permit from the Natural Resources Council before commencement of construction of the bridge did not constitute a defense to plaintiff's action.

The trial court enjoined the commission and all persons acting through or under

**838**

it from proceeding with the construction of a bridge at this point across Allen Creek with concrete piers or pilings located in the channel of the ditch or which would in any manner obstruct it; that if construction had been completed at the date of the decree defendant commission was ordered to remove the piers constructed in the ditch which the court had found to be illegal.

The highway commission had issued the construction company a "Stop Order" October 3; a résumé order dated October 12. At time of trial the construction company had run the cement floor and the bridge was 60–65 percent completed; at the time of the decree on December 15 the bridge was actually completed.

IV. Defendant commission, only defendant appealing, asserts as propositions relied upon for reversal: (1) its action was not fraudulent, illegal, or in derogation of statutory authority, and cannot be enjoined, (2) injunction will not lie for acts already done, (3) mandatory injunction will not issue. unless facts are clear, free from reasonable doubt, and there is a showing of irreparable injury and (4) assuming arguendo the commission acted illegally, plaintiff's remedy is mandamus.

Plaintiff does not appeal from that portion of the decree which applies to Capitol Construction Company nor from the ruling on the motion to strike that portion of the amendment which refers to the bridges to be built for Highway I–29 across Allen Creek.

We prefer to consider defendant's propositions other than in the order assigned. Under its fourth proposition the commission asserts plaintiff's proper remedy is by mandamus to compel the commission to institute condemnation proceedings. It contends that if the bridge as newly constructed in fact obstructs water flowing in the drainage ditch, the act of stopping the normal flow is a taking of private property for public use.

■ We agree mandamus will lie to compel institution of condemnation proceedings

where there has been a taking of private property for public use without compensating the owner. Mapes v. Madison County, 252 Iowa 395, 398, 107 N.W.2d 62, 64, 91 A.L.R.2d 984; Anderlik v. Iowa State Highway Commission, 240 Iowa 919, 925–926, 38 N.W.2d 605, 609; Baird v. Johnston, 230 Iowa 161, 164, 297 N.W. 315, 316; Dawson v. McKinnon, 226 Iowa 756, 770, 285 N.W. 258, 265.

In addition to Anderlik, supra, defendant relies primarily on Liddick v. Council Bluffs, 232 Iowa 197, 5 N.W.2d 361.

In Anderlik v. Iowa State Highway Commission, supra, 240 Iowa at 924, 38 N.W.2d at 608, we said:

"The basis of the Liddick decision is that real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as rights to access (ingress and egress), light, air and view, and when such rights are destroyed or substantially impaired by such a structure in the highway as was here made, there is at least a partial taking of the property in the constitutional sense."

In Liddick v. Council Bluffs, supra, 232 Iowa at 217, 5 N.W.2d at 372, in discussing what meaning property has in the constitutional sense, this court quoted from 1 Lewis, Eminent Domain, Third Ed., section 63:

"[T]he author, in answer to what 'property really is,' says: 'The term is applied with many different meanings. "Sometimes," says Austin (2 Jurisprudence, section 1051), "it is taken in the loose and vulgar acceptation to denote not the right of property or *dominium,* but the subject of such a right; as where a horse or piece of land is called my property." A little reflection, however, will suffice to convince any one that property is not the corporeal thing itself of which it is predicated, but certain rights in or over the thing. * * * We must, therefore, look beyond the thing itself, beyond the mere corporeal object, for the true idea of property. Property

may be defined as certain rights in things which pertain to persons and which are created and sanctioned by law. These rights are the right of use, the right of exclusion and the right of disposition.' After mentioning the rights of lateral support, access, light, air, flowing water, etc., the author, referring to them, says: 'These rights, wherever they exist, and to the extent to which they are secured by law, are part and parcel of the owner's property in land.' Section 63."

With the quoted statement as support, defendant commission argues that if there is a property right in air, light, ingress and egress, and flowing water, there would also be a property right in having a stream flow without the interference of piers causing additional silt. The argument has merit.

█ We are of the opinion that under the circumstances here construction of a bridge with piers in the creek channel would be a taking of property in the constitutional sense and mandamus will lie to compel institution of condemnation proceedings by the highway commission so plaintiff may be compensated for the additional taking of its property for this public use. There is a presumption that in the trial of such issue adequate damages for the property taken will be awarded. Browneller v. Natural Gas Pipeline Company, 233 Iowa 686, 700, 8 N.W.2d 474, 481. Mandamus accompanied by condemnation proceedings thus affords plaintiff an appropriate and efficient remedy.

The improvement here was such as was never contemplated at the time the right-of-way for Highway 30 was acquired. Where through prior condemnation the rights as to property taken later were not acquired, the proper remedy also is mandamus to compel further condemnation. Mapes v. Madison County, supra, 252 Iowa at 398, 107 N.W.2d at 64.

V. Plaintiff contends the trial court's decree granting mandatory injunction should be affirmed. The drainage district argues it is entitled to injunction to prevent

inadequacy of compensation, multiplicity of suits and restraint of irreparable injury in the form of repeated and continued trespasses or encroachments.

█ We do not agree. As stated in Division IV, supra, mandamus will lie to compel institution of condemnation proceedings where there has been a taking of private property for public use without compensating the owner. The effect of thus providing condemnation proceedings, with the right to trial by jury on appeal from the condemnation award, is to furnish plaintiff with the full and complete relief to which it is entitled and excludes plaintiff's right to mandatory injunction.

Although mandamus is trialable as an equitable action under our practice, Code section 661.3, its process leads to an adequate remedy at law in the form of condemnation proceedings where plaintiff is given opportunity to redress the wrong.

One of the chief causes of the inadequacy of the remedies at law lies in the fact the injury is irreparable.

"As ordinarily understood, an injury is irreparable, within the law of injunctions, where it is of such a character that a fair and reasonable redress may not be had in a court of law, so that to refuse the injunction would be a denial of justice—in other words, where from the nature of the act, or from the circumstances surrounding the person injured, * * *, it cannot be readily, adequately, and completely compensated for with money." 28 Am.Jur., Injunctions, section 48.

█ "Upon the principle that equity will not grant an injunction, where there is a remedy at law which is full, adequate, and complete, it is fairly well settled that where there is an adequate remedy by mandamus a suit for injunction cannot be successfully maintained. According to the weight of authority this rule applies where injunctive relief of a mandatory character is sought, as well as where the relief sought is merely preventive." Backus v. Abbot, 136 W.Va.

891, 69 S.E.2d 48, 54. Quoting from 28 Am.Jur., Injunctions, section 42. See also Harley v. Lindemann, 129 Wis. 514, 109 N.W. 570, 573; Annotation in 93 A.L.R. 1495. Although the distinction between law and equity is recognized and observed in West Virginia, under their procedure mandamus is a remedy at law. We do not believe this detracts from its support for our position here.

VI. Our favorable decision on defendant's fourth assignment of error makes consideration of its other contentions unnecessary.

With directions to dissolve the injunction as issued and dismiss plaintiff's action without prejudice to its right to bring mandamus, the cause is

Reversed and remanded.

All Justices concur.