JOHN ANDERLIK et al., Appellees, v. IOWA STATE HIGHWAY COMMISSION et al., Appellants.

No. 47464.

(Reported in 38 N. W. 2d 605)

AUGUST 5, 1949.

Rehearing Denied October 21, 1949.

Robert L. Larson, Attorney General, and Folsom Everest, Special Assistant Attorney General, for Highway Commission, and Elliott, Shuttleworth & Ingersoll, of Cedar Rapids, for appellants.

Donnelly, Lynch, Lynch & Dallas and Ralph V. Harman, all of Cedar Rapids, for appellees.

Garfield, J.—We will consider the case as if the State Highway Commission were sole defendant. Primary Highway 84, running south from Cedar Rapids to the municipal airport, crosses the North Western railroad tracks which run nearly east and west along, but just outside, the city's corporate limits. Plaintiffs' three residences face east on the west side of the highway just south of the railroad. Commencing in September 1947, a viaduct and approaches thereto were constructed over the railroad under contracts let by defendant commission. The south approach to this overhead crossing is in the highway in front of plaintiffs' properties.

In this mandamus action to compel defendant to institute condemnation proceedings for the assessment of plaintiffs' damages from the erection of the improvement, the question presented is whether there was a taking of plaintiffs' properties in violation of Article I, section 18, Constitution of Iowa, which states, "Private property shall not be taken for public use without just compensation * * *." Our Constitution does not say "taken or damaged." In granting the relief asked, the trial court held there was such a taking notwithstanding there was no actual physical encroachment upon plaintiffs' properties.

Before the improvement here in question was made highway 84 in this vicinity was substantially level, 66 feet wide, with

blacktop surface, affording ample access to plaintiffs' properties and without affecting the light, air or view. Plaintiffs' lands are generally level and about the same elevation as the old highway.

The improvement consists of a bridge or viaduct about 155 feet long (north and south) over the railroad with approaches of solid earth in the highway both north and south of the bridge. The south approach is 1353 feet long, the north approach 1092 feet. The new roadbed is 56 feet wide at the top with pavement of 22 feet in the center and shoulders of 17 feet on each side. Grading has been done to provide for pavement 45 feet wide. Defendant purchased ground along the east side of the old highway just south of the railroad for use as a borrow pit and to provide added space for the improvement.

Plaintiffs Mr. and Mrs. Robinson own about one and one-fourth acres adjoining the railroad on the south with a frontage of 256 feet on highway 84. The house is a story and a half, modern, with five rooms. Plaintiffs Mr. and Mrs. Anderlik own about four acres adjoining Robinsons' on the south with a frontage of 280 feet on the highway. Their house is new, one story, with many modern conveniences. Plaintiffs Mr. and Mrs. Harper own the five-acre tract immediately south of Anderliks' with a frontage of 419.4 feet on highway 84. Their house is a story and a half with the first floor and one room upstairs "finished off." They also have a small barn and four other outbuildings. Robinsons and Anderliks live in their properties. Harpers rent theirs at $40 a month.

The front of Robinsons' house is 20 feet west of their east lot line and 43 feet west of the west edge of the embankment which is 24.12 feet high in front of their house. The front of Anderliks' house is 40⅓ feet west of their east lot line and about 71 feet west of the west edge of the embankment which is 19.5 feet high in front of their house. The front of Harpers' house is 51 feet west of their east lot line and 80 feet west of the west edge of the embankment which is 14.5 feet high in front of their house. These three elevations of 24.12, 19.5 and 14.5 feet are from the surface of the old highway.

The only means of access to plaintiffs' properties is over that part of the old highway between the west edge of the em-

bankment and their east lot line. This old road comes to a dead end at the south line of the railroad right of way. To get on the present highway from plaintiffs' properties it is necessary to travel what is left of the old road to Prairie Avenue which intersects highway 84 at the southeast corner of the Harper tract. The respective distances from this point to the Harper, Anderlik and Robinson houses are 399, 569 and 779 feet. Thus on a round trip into Cedar Rapids the Robinsons must travel 3116 feet farther than before.

This old road is no longer blacktop but is surfaced with light gravel. Defendant's district engineer testifies it is to be surfaced with crushed rock. Plaintiffs say the part which can be traveled measures from 8 to 14 (with an average of 11) feet wide in front of their properties. Defendant's resident engineer testifies such width measures from 15 to 21 feet.

The improvement obstructs the view to the east from these properties. The embankment in front of Robinsons' house is about as high as the house and obviously they are able to see only the west side of the embankment when they look east, even from their upstairs windows. The embankment in front of Anderliks' is above their chimney and they are unable to see over the embankment from their house or front lawn. Because the embankment is lower in front of Harpers' house and the house is farther west, a person standing at their upstairs windows can see over the embankment, but from the downstairs only the side of the embankment may be seen. Before the improvement was built there was no obstruction to the view to the east or northeast from these properties except for a knoll about 60 rods east and a little south of Harpers' house.

Plaintiffs' testimony is that their houses have been made darker and the breeze and air from the east have been shut off by this embankment. Mr. Robinson says "it has made our house lots darker and shut off any breeze or air from that direction." Mrs. Anderlik testifies "the embankment has impaired the breeze from the east and there is none unless there is a real heavy wind. * * * after the viaduct was built the sun comes over the rise an hour late in the morning." A professor of physics as a witness for defendant expresses the opinion the effect of

the embankment upon light in the three houses would be insignificant.

A real estate man gives his opinion of the fair and reasonable market values of each of the three properties before the construction of the improvement and under conditions at the time of trial. The former values total $32,500 and the latter $21,500. The improvement was substantially but not entirely completed at the time of trial, June 30, 1948. The approaches had not been paved, guardrails were yet to be built and the sides of the embankment were to be sodded. It is doubtless true, as defendant suggests, the sides of the embankment will present a better appearance after they have been sodded than they did at the time of trial.

██ Upon the evidence above summarized the trial court held there had been a taking of plaintiffs' properties under our decision in Liddick v. City of Council Bluffs, 232 Iowa 197, 232, 233, 5 N. W. 2d 361, 379:

"We now hold that the destruction of the rights of access, light, air, or view, *or the substantial impairment or interference with these rights* of an abutting property owner in the highways or streets adjacent to his property, by any work or structure upon such highways or streets, intended for the improvement thereof, done by the state or any governmental subdivision thereof, is a 'taking' of the private property of said owner within the purview and provisions of section 18, Article I of the Iowa Constitution." (Italics ours.)

We think the trial court was right. It is true the abutting property in the Liddick case was in a city and not, as here, just outside a city's corporate limits. But this does not afford a sound basis for distinguishing the cited case. The constitutional provision is of course equally applicable to property within and without corporate limits of a municipality and the above-quoted decision is equally so applicable.

It is also true that Division I of the Liddick opinion holds the property owners there were entitled to damages from the city under what is now section 389.22, Code, 1946 (5953, Code, 1939), because of change of an established grade of the street and that this statute has no application outside cities and towns.

Nor is there any statute similar to 389.22 which entitles the owner of property outside a municipality to damages for change of grade of a highway. But subsequent divisions of the Liddick opinion consider the very question here involved irrespective of the right to damages under section 389.22 and reach the conclusion quoted above.

We appreciate there are many decisions contrary to the Liddick case. A number of them were considered in reaching our conclusion there but we expressed disagreement with them. Defendant here, relying upon substantially the same precedents, asks us to overrule the Liddick case but we are unwilling to do so.

■ The basis of the Liddick decision is that real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as rights to access (ingress and egress), light, air and view, and when such rights are destroyed or substantially impaired by such a structure in the highway as was here made, there is at least a partial taking of the property in the constitutional sense. The record here shows such an impairment of these rights of plaintiffs.

Defendant places much reliance upon Pillings v. Pottawattamie County, 188 Iowa 567, 176 N. W. 314, Lingo v. Page County, 201 Iowa 906, 208 N. W. 327, and Talcott Brothers v. City of Des Moines, 134 Iowa 113, 109 N. W. 311, 12 L. R. A., N. S., 696, 120 Am. St. Rep. 419. These decisions were also relied upon by defendants and considered by us in Liddick v. City of Council Bluffs.

As there pointed out, the change of grade in the Pillings case was made because of the natural contour of the ground (cutting down a hill and making a fill at the bottom) and not, as here, wholly by a change in the natural surface by artificial means such as the construction of a bridge over a railroad. Therefore, we concluded in the Liddick opinion, the improvement involved in the Pillings case must have been anticipated and the damages assessed accordingly at the time of the original taking. There is no indication here that any such improvement as defendant has made was remotely contemplated at the time the original easement for the highway was acquired.

In Lingo v. Page County, supra, a bridge was built over a

railroad which crossed part of plaintiff's farm through a comparatively deep cut and the highway adjacent to the farm was partially relocated upon land condemned by the county. Plaintiff's route to the near-by town was not substantially changed or impaired. The decision that there was no taking is based on Pillings v. Pottawattamie County, supra.

Talcott Brothers v. City of Des Moines, supra, involved loss of lateral support by excavating a city street to bring it to an established grade. The opinion recognizes (at page 126 of 134 Iowa, page 315 of 109 N. W.) that "The right to light, air, of access * * * as well as the right of lateral support, are property rights, and it follows as matter of course that he who deprives the owner thereof in any degree is guilty of a taking." But by a narrow construction of Article I, section 18, of our Constitution ("But with consistency this grant cannot be given force according to a literal reading of the language used."—page 127 of 134 Iowa), the opinion holds there was no taking. In the Liddick case it is said (at page 215 of 232 Iowa, page 371 of 5 N. W. 2d) this constitutional provision "should be broadly and liberally interpreted" and authorities are there cited to support the statement.

It must be admitted that some of the views expressed and decisions cited in the Pillings, Lingo and Talcott cases, all supra, conflict with our opinion in Liddick v. City of Council Bluffs. This is recognized in the Liddick decision and the three earlier cases are there overruled insofar as such conflict exists.

We have carefully considered other contentions pressed upon us by defendant that are not discussed herein. We think the case is controlled by Liddick v. City of Council Bluffs, supra. Bacich v. Board of Control of California, 23 Cal. 2d 343, 351, 144 P. 2d 818, 823, 824, and In re Petition of Burnquist, 220 Minn. 48, 53, 19 N. W. 2d 394, 397, cite and quote with approval from the Liddick case.

It may be well to add that it is held in Baird v. Johnston, 230 Iowa 161, 164, 297 N. W. 315, 316, and Dawson v. McKinnon, 226 Iowa 756, 770, 285 N. W. 258, mandamus will lie to compel the institution of condemnation proceedings

where there has been a taking of private property for public use without compensating the owner.—Affirmed.

HAYS, C. J., and BLISS, OLIVER, HALE, WENNERSTRUM, SMITH, and MULRONEY, JJ., concur.

MANTZ, J., not sitting.