LULU S. HATHAWAY et al., appellees, v. CITY OF SIOUX CITY et al., appellants.

No. 48248.

(Reported in 57 N.W.2d 228)

MARCH 10, 1953.

Thos. J. Griffin and Wm. A. Shuminsky, both of Sioux City, for appellants.

Robert B. Pike, of Sioux City, for Strange Brothers Hide Company, appellant and cross-appellee.

A. H. Bolton, S. D. Crary, V. O. DeWitt, Frank Jacobs, and Robert Crary, all of Sioux City, for appellees.

SMITH, C. J.—Plaintiffs' properties (seven modern five- to six-room dwellings) are on an eminence known as Prospect Hill in Sioux City. To the south they overlook the Missouri River which flows easterly. First Street (also referred to as "West First Street") runs east and west between them and the brow of the hill.

Defendant Strange Brothers Hide Company owns the lots immediately south of the street and extending thence down the south slope of the hill to the ground level and, except for intersecting railroad and highway right of ways, from there on south to the river. The ground from the foot of the hill south (a dis-

tance of about 150 yards) is comparatively flat. The main line tracks of the Chicago, Milwaukee, St. Paul and Pacific Railway are along or near the foot of the hill. And nearer the river the State Highway Commission was in 1948 building a highway, known in the record as the "River Road" and also as "Gordon's Drive", an extension of Primary Road No. 77, for which the city had agreed to furnish the necessary dirt filling.

"Combination Bridge" crosses the river into Nebraska at or near the southeast corner of the Strange Brothers property and defendant was building or had recently built a civic riverfront auditorium in the vicinity. For these various purposes there was needed what the trial court described as a "mountainous quantity of earth."

An arrangement was made between defendants whereby defendant Strange Brothers Hide Company gave permission for removal of the necessary amount of earth from its property "adjoining the west side of Combination Bridge and south of W. First Street." The defendant city, by council resolution, agreed "to save the Iowa State Highway Commission harmless from any damage to abutting property on or in the vicinity of First Street * * * in so far as such * * * commission, its agents, employees, and contractors in the excavation of said borrow shall conform to the slopes established in the proposals * * *." The "proposals" referred to granted defendant city the "right to borrow earth" from the Strange Company property "to the top of the slope on the north of such tracts of land or the south line of First Street as now laid out, whichever extends farthest north. Such excavation to be cut ½ to 1 slope with the top of the slope on the north to be the south line of First Street or the present top of the slope" with some exception not material here. This means a slope that follows the hypotenuse of a right-angled triangle with a horizontal side of half a foot and a vertical side of one foot.

The taking of this tremendous quantity of dirt (almost 300,000 yards) necessitated a definite moving back of the foot of the bluff and a much steeper, more precipitous, slope on the south side of Prospect Hill than had been established by nature. The evidence shows the top soil was loess and the bottom clay.

In places there was an "exposure of sand" and some boulders. The resulting slides were inevitable.

The trial court observed that the engineers and the highway and city officials "must at all times have been fully aware of the damage sure to accrue to the people having property on the crest of Prospect Hill; that their decision to obtain the earth at this near-by locality was a calculated risk; [and] that considerations of haste and expediency prompted them to avoid condemnation or attempt to purchase plaintiffs' properties."

There is ample evidence the excavation operations by removing lateral support caused earth slides which destroyed First Street adjacent to plaintiffs' properties. There was no evidence any of plaintiffs' properties were physically invaded but there was expert testimony that further cave-ins and slides would occur before a natural stability would be reached and that there was reasonable probability plaintiffs' properties would be so invaded. As frequently—perhaps inevitably—happens, the expert testimony was in conflict as to such future probability.

The case went to the jury under rulings that eliminated questions of negligence and based plaintiffs' right of recovery on the single proposition of "loss of lateral support and consequent damage." The instructions are not set out but we are told the jury was instructed "that the lands of Strange Brothers owed support not alone to West First Street, which intervened, but also to the properties of plaintiffs on the north side of the street"; and also was permitted "to take into account further subsidence reasonably certain to take place in the future." There are shown no exceptions to instructions.

The jury returned verdicts—against both defendants—in varying amounts for the several plaintiffs and judgments were entered thereon. No motion for new trial was filed but defendants filed a motion for judgment notwithstanding verdict based on the refusal to direct verdict at the close of the evidence. Upon the overruling of this motion both defendants appeal, assigning it as the only error relied on.

Thereafter further proceedings, equitable in character, were had upon mutual cross-petitions, in which each defendant claimed a right over against the other for any judgment that

might be rendered ultimately against it. For that purpose further pleadings were filed and evidence taken, after which it was ordered and decreed that defendant city was primarily liable and that defendant Strange Brothers Hide Company have judgment against the city for any "payment or payments which may be made by Strange Brothers Hide Company on the judgments entered herein in favor of the plaintiffs." The defendant city cross-appeals from this decree but does not complain of the dismissal of its own cross-petition or claim here that Strange Brothers' liability was primary and its own secondary.

I. This hasty resumé is sufficient to permit consideration of defendants' appeals from the judgments for plaintiffs. Defendants filed separate briefs: Both urged a verdict should have been directed because there was no actual physical invasion of plaintiffs' premises, defendant Strange Brothers arguing there had been no "subsidence or disturbance of the soil or structural injury to the buildings"; and defendant city that there was no showing defendants have caused plaintiffs' "soil to crumble or cave in under its own weight", the only duty of the party causing the excavation being "to prevent the adjoining land from falling." They cite 2 C. J. S., Adjoining Landowners, section 8; 1 Am. Jur., Adjoining Landowners, section 44; 4 Restatement of the Law, Torts, section 817(i).

If plaintiffs here had merely owned title to their respective premises, without any appurtenant right of ingress and egress over First Street, we would have to determine as to the correctness of the narrow limitation on the doctrine of lateral support contended for by defendants. Such determination might depend on whether we view the right to lateral support "as in the nature of an easement subjecting the supporting land to a natural servitude"; or as only a "right to the integrity of the supporting land."

In the former case, it has been said, the right would probably be violated by the mere removal of support; and intention to cause harm, negligence or actual subsidence would not be necessary to liability; while in the latter, subsidence or other actual harm would have to be shown. 4 Restatement, Torts, Introductory note, pages 185, 186. The cited text says the natural "easement-servitude" theory was the earlier and that prospective

damages were allowed in the earlier cases, but that "neither view has unqualified approval." See page 186.

The author of the case note in 68 L. R. A. 673, 690, says the cases holding that right of action accrues immediately upon removal of the support without waiting for actual subsidence of the adjoining property, "form a negligible minority, although it is submitted that they state the proper view if the right to support is in the nature of an easement."

And in the cited American Jurisprudence text (1 Am. Jur. at page 530) it is stated: "The right to recover prospective damages goes to the foundation of the right to support. If the right is in the nature of a servitude and the injury is the disturbance of that servitude, all damage, present and prospective, resulting from the wrongful excavation should be recovered. On the other hand, if the wrong is not the excavation, since no servitude of support is recognized by the law, but the wrong is the disturbance of the adjoining property, to the enjoyment of which in its undisturbed natural condition the owner thereof is entitled, then no recovery for future disturbances can be had, since they constitute wrongs and causes of action which have not yet come into existence. * * * In the United States, the authorities are not settled, but there seems to be a prevailing opinion that future damage likely to result from the excavation should be recovered." However, at section 34, page 525, the author states: "It is a general rule that a landowner does not suffer damages recoverable at law for an injury to the lateral support of his property until the earth is so much disturbed that it slides or falls, as the actionable wrong is not the excavation, but the act of allowing the other's land to fall."

II. Whatever might be our conclusion if we had a simple question between private owners of abutting premises (a point we do not determine) there is involved here an additional and, we think, a controlling element, viz., plaintiffs' right of ingress to and egress from their premises by way of First Street. This is a property right, an easement in the street which the owner of abutting property has, not common to the public generally and which cannot be taken away without just compensation. 64 C. J. S., Municipal Corporations, sections 1701, 1703; Liddick v. City of Council Bluffs, 232 Iowa 197, 5 N.W.2d 361;

514

25 Am. Jur., Highways, section 154; 29 C. J. S., Eminent Domain, sections 121, 122. This property, under the record here, has been invaded—this damage has accrued.

In the cited Iowa case (Liddick v. City of Council Bluffs, 232 Iowa, page 229) it is said: "The City, as the owner of the street or servient estate, owes an easement of way, or service, to the abutting land, or dominant estates, which it is seeking to destroy as to them and to take and appropriate to itself. It cannot pay this obligation by destroying it or seizing it." See 39 C. J. S., Highways, section 141, page 1081.

This property right of access and egress is appurtenant to plaintiffs' premises. In the instant case there was abundant evidence it was invaded and destroyed, even though there was no crumbling or cave-in or falling of the earth of the lots themselves.

Defendant Strange Company owed the duty of maintaining lateral support both to the street and to plaintiffs' entire properties—not merely the lots described in their deeds and shown on their plats (2 C. J. S., Adjoining Landowners, section 7; 64 C. J. S., Municipal Corporations, section 1703; 1 Am. Jur., Adjoining Landowners, section 25, note 13)—but also to plaintiffs' property rights in the street.

The defendant city's duty to plaintiffs was twofold: 1. To maintain lateral support to their physical premises. 2. Not to interfere with their right of ingress and egress over the street without just compensation. There is abundant evidence the second was violated by it.

III. We think the question of the liability of both defendants for violation of plaintiffs' property rights as above described was proper to be submitted to, and was in fact determined by, the jury. Defendant city strenuously argues that "the question of ingress and egress and the question of access to property is not involved in this appeal because the district court decided the case wholly on the question of lateral support." It cites the language of the trial judge in withdrawing allegations of negligence at the close of plaintiff's case: "This motion * * * is sustained in that * * * the allegations * * * claiming negligence * * * are not sustained by proof. *The court holds that under*

*the record as made submission to the jury is, required only on the proposition of withdrawal of lateral support."*

We have italicized the part quoted by defendant city's reply argument but have also set out the court's introductory statement which throws light on what was actually being decided, viz., the question of liability for violation of plaintiffs' natural rights *without regard to negligence.*

Plaintiffs expressly listed as part of their case the destruction of ingress and egress. They alleged: That "First Street constituted their way to and from the respective parcels * * * and each of said parties had and has an interest in said street that is different from the public in general, in that said street is contiguous to and furnishes to each * * * the only way and adequate way of ingress and egress * * * and the city was under a duty to maintain, repair and keep said street open and in a reasonably safe condition for use by the public, and particularly the plaintiffs herein."

There is further allegation that said street "was safe for public use at all times prior to the acts complained of * * * and was used continuously by the respective plaintiffs as the sole and only means of ingress and egress to and from their respective properties * * *."

By amendment "to conform to the proof" plaintiffs further alleged that destruction of their respective rights of ingress and egress constituted a taking of their property without due process in violation of section 18, Article I, of the Iowa Constitution, and destruction of and a change in the established grade on First Street without compensation in violation of their rights under section 389.22, Iowa Code.

Surely mere withdrawal of allegations of *negligence* did not affect these allegations of injury to plaintiffs' easements by withdrawal of lateral support. The record shows no attack upon the pleadings and no error assigned based upon the giving of instructions thereon. There was no motion for new trial, and the instructions given, though not shown in the record, must be assumed to have been based upon the pleadings and proof.

There is abundant evidence in the record that the destruction of plaintiffs' property rights in First Street was caused by

withdrawal of lateral support formerly furnished by the property belonging to defendant Strange Brothers Hide Company's premises. That both these defendants were liable for its withdrawal could, under the record, be found by the jury. The trial court submitted the question of future and probable further recession of the hill so as to invade plaintiffs' lots lying north of First Street. There was no exception preserved or error assigned by either defendant on that score and we have no occasion to pass on the correctness of such instruction.

We conclude the verdicts were based on actual invasion of plaintiffs' property right. of ingress and egress by reason of removal of lateral support for which there was evidence sufficient to support a verdict that both defendants were liable.

IV. We reach this conclusion without consideration of plaintiffs' claim that their constitutional rights under section 18, Article I, of the Iowa Constitution were invaded. The constitutional right of access of one owning property adjoining a highway as a part of his real property was affirmed in Anderlik v. Iowa State Highway Comm., 240 Iowa 919, 38 N.W.2d 605. That decision reaffirms the holding in the Liddick case, supra (232 Iowa 197), as applicable even without any statutory provision.

V. There remains the city's cross-appeal from the decree holding it primarily liable and giving said defendant company a right of recovery over against the city for any amount said company may pay on plaintiffs' judgments against both.

The city's cross-appeal is (in brief and argument) predicated upon an assumption that defendants' common liability to plaintiffs is that of tort-feasors who, without deliberate or intentional wrong, were engaged in a common enterprise in the result of which both were interested, and that "neither is entitled to indemnity against the other."

This is of course merely an invocation of the familiar and ancient common-law rule of no contribution or indemnity between joint tort-feasors. Turner v. Hitchcock, 20 Iowa 310, 318; American District Telegraph Co. v. Kittleson, 8 Cir., Iowa, 179 F.2d 946, 951; 18 C. J. S., Contribution, section 11a, b; 13 Am. Jur., Contribution, sections 36 to 38; 42 C. J. S., Indemnity, section 27a, b. Our own court in an early decision

states it thus: "There is no contribution among tort-feasors who have all *knowingly* committed a wrong." Turner v. Hitchcock, supra. The emphasis has some significance. It constitutes a reminder that the rule is subject to some qualifications or exception. In fact the rule itself is sometimes referred to as an exception to a more general doctrine—"that one of several persons equally situated who has been compelled to bear more than his equitable share of a common burden is entitled to contribution from the others who have borne less than their respective shares." 13 Am. Jur., section 36, supra.

The cross-appellee here is claiming something more than mere contribution, viz., *complete indemnity.* But the same principle applies when tort-feasors are involved. The trial court held the two defendants, though both equally liable to plaintiffs, were not equally guilty and that their relative guilt may be determined for the purpose of administering justice between them, citing Horrabin v. City of Des Moines, 198 Iowa 549, 199 N.W. 988, 38 A. L. R. 554; American District Telegraph Co. v. Kittleson, supra, 8 Cir., Iowa, 179 F.2d 946; City of Des Moines v. Des Moines Water Co., 188 Iowa 24, 35, 175 N.W. 821; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 1142, 1143, 49 N.W.2d 501, 502; Pfarr v. Standard Oil Co., 165 Iowa 657, 664, 146 N.W. 851, L. R. A. 1915C 336.

We agree with the holding of the trial court at this point. The cited cases recognize the soundness of the proposition that indemnity may be decreed in a proper case and apparently the city does not seriously question it.

The trial court found, after reviewing the record: "The city thus was the primary and active wrongdoer and Strange Brothers Hide Company only a passive wrongdoer * * * only constructively and secondarily liable."

It was the city that needed the earth filling to fulfill its agreement with the State Highway Commission and for other municipal purposes. It was not a Strange Brothers project. It was initiated by the city. The city engineer solicited Strange Brothers and the arrangement already referred to resulted.

The original work of cutting down the slope was done by a contractor under contract with the highway commission. It began

in July 1948. Several earth slides occurred thereafter that year, the major one December 8, 1948.

The trial court remarked this latter slide "seemingly prompted" the revision in 1949 of the original arrangement. Under this revision Strange Brothers Company's own contractor in 1949 removed from the foot of the hill an accumulation of between 20,000 and 25,000 yards of loose dirt that had been deposited principally by the December slide.

By this revision the city expressly agreed to save both the commission and the Strange Company "harmless from any claims of any persons for damage to property abutting on, contiguous to, or in the vicinity of, West First Street."

The trial court found: "Earth slides took place throughout the summer of 1949, increasingly in June; [and that] a major slide in that month took a part of the used portion of West First Street, necessitating immediate and permanent closing of West First Street to vehicular traffic."

While the record may not entirely justify the conclusion that the damage complained of by plaintiffs was entirely suffered after this revised contract was entered into protecting cross-appellee Strange Company from damage claims, the contract itself is nevertheless significant as recognizing the relationship of defendants to each other throughout the entire transaction. It reveals the city as the principal mover and the one ultimately liable for damage to third persons.

The initial and primary duty of protecting plaintiffs' special rights in the street was the city's. The wrong involved here was malum prohibitum. It involved no moral delinquency or turpitude. See Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 327, 16 S. Ct. 564, 568, 40 L. Ed. 712, 713, citing Lowell v. Boston & Lowell R.R., 23 Pick. 24, 32; Snohomish County v. Great Northern Ry. Co., 9 Cir., Wash., 130 F.2d 996, 1000.

The project was a public one in which the city and state were collaborating. Strange Brothers had nothing to gain except the formal vacation of a part of a street already unused and a possible addition of usable level ground between the foot of the hill and the railroad right of way—a possibility apparently not realized.

We are aware of the frequent difficulty in determining when tort-feasors are and when they are not in pari delicto; or when they are and when they are not in the same fault toward the person injured, and whether the fault of one is or is not the primary and efficient cause of the injury. But the present case seems clearly one where the distinction must be recognized. The trial court properly decided that the city was primarily liable.

We conclude the case must be affirmed on both appeals. Appellees' motion to dismiss is overruled.—Affirmed on both appeals.

All JUSTICES concur.