John STOM, Appellee,

v.

The CITY OF COUNCIL BLUFFS, Iowa,
Appellant.

No. 54343.

Supreme Court of Iowa.

Sept. 9, 1971.

Peters, Walker, Campbell & Pearson, Council Bluffs, for appellant.

Pogge, Root & Steege, Council Bluffs, for appellee.

LeGRAND, Justice.

The ultimate question here is whether a landowner who has building lots fronting on a platted but unopened street is entitled to damages from a municipality which takes away all access to those lots, leaving the landlocked owner without means of ingress or egress.

Defendant's assignments of error raise these issues: (1) The trial court erred in overruling its motion for directed verdict and, later, its motion for judgment notwithstanding the verdict; (2) the trial court erred in refusing to give instructions requested by defendant; (3) the trial court erred in permitting a tardy amendment which materially changed the issues, contrary to rule 88, Rules of Civil Procedure; and (4) the verdict is excessive.

We affirm the trial court on condition that plaintiff remit all of the verdict in excess of $10,000. If he refuses to do so, we grant a new trial.

The factual background important to our decision may be put quite briefly. Plaintiff bought his land in 1945. It comprises nine building lots fronting on a portion of Warren Street, a public street in Council Bluffs, which was dedicated and accepted by the city but which has never been opened or improved. At the same time, plaintiff purchased his homestead located south of these lots. Access to this property is not involved, but we point out there is no way to get from his home to the nine lots because of the contour of the land. The two parcels are separated by an impassable gully or ditch, and the fact that plaintiff owns land which is contiguous to the lots is unimportant since it affords him no access.

Prior to the street improvement which led to this litigation plaintiff had access to his lots by a circuitous route of approximately five blocks over public streets—some improved, some not.

He proceeded east one-and-a-half blocks on Mt. Vernon Street, a partly unimproved public street; then north one block on Marshall Street; then west two blocks on Warren Street, also an unimproved public street.

This controversy involves the improvement of one block of Warren Street between Marshall Street and Harrison Street. Prior to that improvement plaintiff could reach his nine lots by the route already described. The terrain was rough, uneven and had a grade of approximately 30 percent. For many years plaintiff used this street in getting to his lots but could do so only by the use of a horse team or a tractor. Automobiles could not use it except "under ideal conditions." Plaintiff used his lots for a truck garden and sold the produce raised although his income from this source was small. The parties agreed that the street was a public street properly dedicated and accepted by the city but that it had never been improved.

In 1962 the city undertook a program to improve Warren Street from Marshall to Harrison, stopping just short of plaintiff's lots. Warren Street from Marshall to Harrison was brought to the pre-established grade set by ordinance in 1959 and was paved with concrete surface. It is conceded the work was done in conformance with the grade established by the ordinance.

In order to bring the street to the established grade, the city cut down the portion of Warren Street being improved and left an embankment of almost 20 feet at the point where that street intersects with Harrison. The effect of this was to leave plaintiff with no access to his nine lots from any source.

Perhaps this is best shown by this picture:

The houses shown in this photograph have no significance.

The exhibit graphically illustrates what plaintiff's witnesses orally related—that after the improvement of the street, plaintiff was unable to reach his land by either Warren Street (the paved street in the picture) or by Harrison Street, an unimproved

public street running along the base of the embankment.

I. We must first decide an important issue upon which the whole case depends and one upon which the parties, even now, are unable to agree. It concerns the theory of plaintiff's case.

Defendant insists, as it did in the trial court, that plaintiff has no right of action except under section 389.22, The Code, which we set out in full:

"When any city or town shall have established the grade of any street or alley, and any person shall have made improvements on the same, or lots abutting thereon, according to the established grade thereof, and such grade shall thereafter be altered in such a manner as to damage, injure, or diminish the value of such property so improved, said city or town shall pay to the owner of such property the amount of such damage or injury."

Defendant places great reliance upon our recent decision in Tott v. Sioux City, 261 Iowa 677, 155 N.W.2d 502 (1968). Plaintiff, on the other hand, has from the start disavowed any intention of seeking recovery under this statute, basing his suit instead upon his constitutional right to "just compensation" for loss of access to his property. (Article I, section 18, Constitution of Iowa.) His principal authorities are Liddick v. City of Council Bluffs, 232 Iowa 197, 5 N.W.2d 361 (1942) and Anderlik v. Iowa State Highway Commission, 240 Iowa 919, 38 N.W.2d 605 (1949).

This running controversy between the litigants—in the pleadings, during trial, and now on appeal—points up similar disagreements among courts. Decisions vary from state to state, depending on whether the deprivation of access is considered a "taking" of property for which the owner is constitutionally entitled to compensation.

In our discussion we assume, therefore, plaintiff cannot prevail unless Iowa regards loss of, or unreasonable interference with, access by governmental action as a "taking" of property in the constitutional context.

Although the authorities are split on the issue (Anderlik v. Iowa State Highway Commission, supra, 240 Iowa at page 923, 38 N.W.2d at page 608), we have long adhered to the rule that the right of access may not be taken away or unreasonably interfered with unless just compensation is paid under Article I, section 18 of our constitution. Long v. Wilson, 119 Iowa 267, 268, 93 N.W. 282, 283 (1903); Borghart v. Cedar Rapids, 126 Iowa 313, 316, 101 N.W. 1120, 1121 (1905); Ridgway v. City of Osceola, 139 Iowa 590, 594, 117 N.W. 974, 975 (1908); Hubbell v. City of Des Moines, 173 Iowa 55, 63, 154 N.W. 337, 340 (1915); Nalon v. City of Sioux City, 216 Iowa 1041, 1044, 250 N.W. 166, 167 (1933); Liddick v. City of Council Bluffs, 232 Iowa 197, 232, 5 N.W.2d 361, 379 (1942); Anderlik v. Iowa State Highway Commission, 240 Iowa 919, 923, 38 N.W.2d 605, 608 (1949); Gates v. City of Bloomfield, 243 Iowa 671, 675, 53 N.W.2d 279, 281 (1952); Hathaway v. Sioux City, 244 Iowa 508, 513, 57 N.W.2d 228, 231 (1953); Iowa State Highway Commission v. Smith, 248 Iowa 869, 874, 82 N.W.2d 755, 758 (1957). See also 2 Nichols on Eminent Domain, Third Ed., section 6.32, pages 6–79.

It is clearly the holding in Liddick and Anderlik that plaintiff is not limited to the statutory remedy provided in chapter 389, as defendant claims, but may be entitled to compensation for a "taking" of his right of access under Article I, section 18 of the constitution upon a showing that such access has been destroyed or unreasonably interfered with.

Incidentally the authorities make no distinction between vacating a street, obstructing it, or other conduct impairing the landowner's right of reasonable access to his property.

Liddick v. City of Council Bluffs, supra, contains an exhaustive analysis and discussion of our prior cases. Much of

what is said there is applicable here, but we limit ourselves to a few brief quotations from that case to illustrate what we deem to be the controlling considerations. At page 223 of 232 Iowa, page 375 of 5 N.W.2d, we said:

"Thus, again, [in Long v. Wilson, 119 Iowa 267, 268, 93 N.W.2d 282, 283] did this court approve the principle that an abutter's easement, or right of access, is a right of property, protected by the constitution, which cannot be taken from the owner without compensation." And to remove any possible uncertainty about our law, we flatly held as follows, "We now hold that the destruction of the rights of access, light, air, or view, or the substantial impairment or interference with these rights of an abutting property owner in the highways or streets adjacent to his property * * * is a 'taking' of the private property of said owner within the purview and provisions of Section 18, Article I, of the Iowa Constitution." (232 Iowa at page 232, 5 N.W.2d at page 379.)

While the Liddick case was brought under the predecessor to our present chapter 389, the right to compensation was not restricted to the remedy granted by that chapter. We settled this in the later case of Anderlik v. Iowa State Highway Commission, supra, 240 Iowa at 923, 38 N.W.2d at 607, 608, where we reaffirmed what was said in Liddick and added this:

"It is also true * * * the Liddick opinion holds the property owners there were entitled to damages from the city under what is now section 389.22, Code, 1946 * * * because of change of an established grade of the street and that this statute has no application outside cities and towns. * * * *But subsequent divisions of the Liddick opinion consider the very question here involved irrespective of the right to damages under section 389.22 and reached the conclusion above quoted.* * * *

"The basis of the Liddick decision is that real property consists not alone of the tangible thing but also of certain rights therein sanctioned by law, such as rights to access (ingress and egress), light, air and view, and when such rights are destroyed or substantially impaired * * * there is at least a partial taking of the property in the constitutional sense." (Emphasis added.)

■ We hold plaintiff is not limited to recovery by the terms of chapter 389, if he can show he has been deprived of reasonable access to his property. He may then demand compensation under the constitution (Article I, section 18) for a valuable property right which has been taken from him.

■ On this matter we give the evidence its interpretation most favorable to plaintiff since defendant's real—and persistent—complaint is that it was entitled to a directed verdict. Rule 344(f), 2, R.C.P. We have said no hard-and-fast rule can be stated as to when a property owner has been denied reasonable access. Unless the question is free from doubt, it is for jury determination. Kuker v. Iowa State Highway Commission, 253 Iowa 1130, 1136, 114 N.W.2d 290, 293 (1962).

We find, as did the trial court, ample evidence upon which the jury could find plaintiff had lost all access to his lots. Defendant was not entitled to a directed verdict nor to have its motion for judgment notwithstanding the verdict sustained.

We do not intend to retreat from anything said in Tott v. Sioux City, supra, but that case is not concerned with the issue presented here. It is limited to a determination of rights when a property owner by mandamus action seeks to *compel* a city to open and improve a public street. Plaintiff concedes he has no such right. In Tott the plaintiff claimed a special right which would require a city to afford him—even against the interests of the public generally—access better and more convenient than he then had. The

authorities, as pointed out in our Tott opinion, are virtually unanimous in declaring this is a matter of municipal discretion with which courts will not ordinarily interfere. Here plaintiff does not seek such relief. He complains because the access he already *had* was destroyed by the acts of the city.

We should probably mention, too, that Aro Investment Co. v. City of Omaha, 179 Neb. 569, 575, 139 N.W.2d 349, 352 (1966), upon which we relied in our Tott case, is factually distinguishable from the case at bar. There plaintiff sought to enjoin the city from closing a street; the plaintiff had ready access to his property from two other directions; and loss of access from the street involved would not seriously interfere with plaintiff's use and enjoyment of his property. This factual situation is hardly good precedent to deny relief in the present case where the jury could find the acts of defendant deprived plaintiff of the *only* access to his property.

II. We have mentioned defendant took away a right of access plaintiff already had. This immediately raises a further question—when does right of access in a public street attach?

The parties agree the street over which this litigation arose was dedicated and platted as a public street and that it was accepted by the city for that purpose. (Section 389.2, The Code.) It had not been improved or opened, although plaintiff and others had made use of it in its unimproved state for a number of years. It is further without dispute that the work done on Warren Street south of plaintiff's property was completed according to the grade established by the 1959 ordinance.

If, as defendant argues, no right of access exists until the city elects to improve the established thoroughfare, then it follows plaintiff's cause is lost, for there could be no "taking" until the property interest arose.

■ But we cannot accept defendant's thesis. We believe, rather, there is strong, although by no means unanimous, authority to support our conclusion that a property owner acquires vested access rights immediately upon the dedication and acceptance of a street for public use. In the case before us, when plaintiff bought his lots, they fronted upon a public street. While he could not perhaps force the city to improve it, he had the right to assume his access to that street, such as it was, would not be summarily taken from him.

Jahr, Law of Eminent Domain (1953), section 53, page 75, puts it this way:

"Every owner of private property abutting on a public street or highway possesses private easement of light, air, and access which constitute property protected by the constitution. * * * The easement springs into being the moment a street or highway is legally acquired. The street or highway need not be physically cleared, regulated, or in any way improved. If it is legally in being, it is enough."

2 Thompson on Real Property (1961 Replacement), section 372, page 494 includes the following:

"A duly executed and recorded plat evidences a dedication of the streets shown thereon to the use of the public which, as to the public, becomes complete upon acceptance." And at page 500 of that treatise appears this, "An actual valid and completed dedication is irrevocable. Thus, a dedication by the owner becomes irrevocable upon the sale of lots by reference to the plat and he is estopped to vacate it, and the grantee of the dedicator is bound by the dedication."

Faced with a problem similar to ours, the Texas Supreme Court said, " * * * [W]hen the plaintiffs purchased their lots with reference to the subdivision plat, they immediately acquired private rights of easement over the streets shown on such plats as abutting their land whether or not said streets were ever accepted or

opened by the City, as representative of the public." Dykes v. City of Houston (Texas 1966), 406 S.W.2d 176, 181.

Several of our cases also lend support to this result. In Hubbell v. City of Des Moines, 173 Iowa 55, 60, 154 N.W. 337, 339, we said, "The plaintiff, as an abutting property owner, has a right to a means of egress and ingress. The street or alley having been established by proper authority, the right, through that instrumentality of ingress and egress, is created." This is repeated with approval in Liddick v. City of Council Bluffs, supra, 232 Iowa at page 225, 5 N.W.2d at page 376.

In our recent decision, Braden v. Board of Supervisors, 261 Iowa 973, 978, 157 N.W.2d 123, 126 (1968), we say, "Hultman, Eminent Domain in Iowa, Revised Ed. (1962), page 22, states: '* * * once a right of access vests in the landowner, it is regarded as one of the rights appurtenant to ownership which may not be appropriated * * * without compensation. This is the case where access to a road is cut off, a road is vacated or abandoned, * * * a viaduct is erected, or a bus stop is created, so long as access to the property by means of a road, street, or other publicly owned property is cut off or substantially impaired.' "

As must be apparent by now, we hold plaintiff, when he purchased his property, acquired a right of access to Warren Street which was then a platted, dedicated, and accepted public street. We have no doubt plaintiff was entitled to compensation if that right was destroyed or seriously interfered with.

III. Perhaps this is an appropriate place to answer another of defendant's objections. It claims that, no matter what else may be said, plaintiff should not recover because his land does not abut upon that part of the street where the grade has been lowered. In other words, since nothing was done to the street in front of plaintiff's land, his access is the same now as it always has been. While this is liter-ally true, it was but an empty right since it led only to a precipice at one end of the block and private property at the other. Access means more than this.

It is generally held to be the right of ingress and egress which permits a landowner and the public generally to get to and use the general system of roads.

State ex rel. State Highway Comm. v. Danfelser, 72 N.M. 361, 384 P.2d 241, 246 (1963), includes this, "We take the position that abutters have a right of access to the *public roads system*; * * *.

"Thus, for clarity, we would define the right of access * * * as a right of ingress to and egress from land on an abutting street or highway and therefrom to the *system of public roads*, subject to reasonable traffic regulations and not affected by diversion of traffic or reasonable circuity of travel." (Emphasis added.)

In Snow v. North Carolina State Highway Commission, 262 N.C. 169, 136 S.E. 2d 678, 681 (1964), the court approved the principle that "an abutting owner has a right of access to the *general system of streets* and to the remainder of his street with all of its connections to a point where they cease to be of more than remote advantage to him." (Emphasis added.)

The same standard is expressed in an article entitled "Access versus Eminent Domain", 47 Texas Law Review (1969), 733, 765, where the author states, "The property right of access should be defined as the reasonable capacity of a landowner to reach the abutting public way by customary means of locomotion and then to reach the general system of public ways."

This was the basis for the conclusion reached in United States v. Smith, 307 F. 2d 49, 59, 5 Cir., (1962), where land on each side of plaintiff's property was flooded, although his was not affected. This effectively took away use of a road in either direction. The argument that he was not harmed because his own property

and the road upon which it directly abutted were not changed was rejected. The court held, although he had access from his property to the highway, he could use it only to go a short distance from "water to water." He was indeed deprived of access. See also Jordan v. Town of Canton (Maine 1970), 265 A.2d 96, 98, for another expression of the same principle.

We have accepted the rationale of this rule many times under varying circumstances. Long v. Wilson, 119 Iowa 267, 268, 93 N.W. 282, 283 (1903); Borghart v. Cedar Rapids, 126 Iowa 313, 316, 101 N.W. 1120, 1121 (1905); Prymek v. Washington County, 229 Iowa 1249, 1252, 1253, 296 N.W. 467, 470 (1941); Liddick v. City of Council Bluffs, supra, 232 Iowa at 232, 5 N.W.2d at 379.

Most of these, together with many from other states, are analyzed and discussed in Warren v. Iowa State Highway Commission, 250 Iowa 473 at page 484, 93 N.W.2d 60 at page 67 (1959), where we said, "In general, these [cited] cases hold that property which does not abut upon the portion of the road vacated, *and the access of which to the general system of highways is not impaired by the vacation,* is not specifically damaged." And, at page 485, 93 N.W.2d at page 67 of that opinion, we said, "If [the property owner] has the *same access to the general highway system as before*, his injury is the same in kind as that suffered by the general public and is not compensable." (Emphasis in both quotations added.) See also Hinrichs v. Iowa State Highway Commission, 260 Iowa 1115, 1127, 152 N.W.2d 248, 255 (1967).

In 26 Am.Jur.2d Eminent Domain, section 200, page 882, we find this statement, "Clearly, an owner of land abutting on a street or highway cannot constitutionally be deprived of all access to his premises without compensation, either by the vacation of the street or highway or its physical obstruction in front of his premises, or its obstruction at another place so that the portion of the street in front of his premises cannot be reached."

The same rule is set out in 2 Nichols on Eminent Domain, Third Ed., section 6.32 (2), pages 6–84.

The one rule emerging from these authorities is that a landowner must show "special" damage different in kind from that suffered by the public generally if he is to successfully assert a claim that his property has been taken from him because of the vacation or closing of a public street in which he has a right of access. See 29A C.J.S. Eminent Domain § 126, page 501.

There is no merit to defendant's claim that plaintiff may not recover because the interference with his access occurred some distance from his land. It is enough if the acts complained of in fact deprived him of access.

IV. What we have already said also disposes of defendant's assignment of error for the trial court's failure to give his requested instructions. This again relates to the insistence that plaintiff could recover only under section 389.22, The Code. Defendant submitted ten requested instructions, all dealing either with the city's discretionary rights or plaintiff's burden of proof under that statute.

But, as heretofore shown, the case was neither brought by plaintiff nor submitted by the court on that theory. The requests were properly refused.

V. We discuss briefly defendant's claim it was prejudiced by the court's order allowing an amendment to plaintiff's petition the day before trial. Amendments should be allowed as a rule and denied only as an exception, although they should not be permitted when they substantially change the issues. We do not interfere with the trial court in such matters except for an abuse of discretion. Rule 88, R.C.P.; Townsend v. Mid-America Pipeline Co. (Iowa 1969), 168 N.W.2d 30, 37; Dailey v. Holiday Distributing Corp. (Iowa 1967), 260 Iowa 859, 865, 151 N.W.2d 477, 482; Brown v. Guiter, 256 Iowa 671, 675, 128 N.W.2d 896, 899 (1964); Akkerman

v. Gersema, 260 Iowa 432, 439, 149 N.W.2d 856, 860 (1967).

██ Part of the amendment set up specifically the constitutional question of right to compensation for loss of access, but the general allegations of the petition as originally filed were probably sufficient to raise this also, particularly since plaintiff at no time plead any reliance on section 389.22, The Code. The amendment also charged negligence on the part of the city whereas the original petition did not do so. There might be merit to defendant's argument that this materially changed the issues, but the negligence question was not submitted to the jury. Its inclusion as part of the pleadings, right or wrong, could not have been prejudicial. The amendment also asked for new relief by way of injunction but this, too, was withdrawn from the case by the trial court. We hold there was no reversible error in allowing the late amendment.

VI. This brings us to the issue of damages, which defendant insists were excessive and without support in the record. The jury returned a verdict for $18,000. The trial court granted a conditional new trial, holding the verdict should stand if plaintiff accepted a remittitur down to $10,000. Plaintiff accepted the reduction but thereafter defendant appealed. This reinstated the original verdict under rule 250, R.C.P.; Castner v. Wright, 256 Iowa 638, 658, 128 N.W.2d 885, 886 (1964); Hall v. Wright, 261 Iowa 758, 774, 156 N.W.2d 661, 670–671 (1968). However, as those cases point out, we have the inherent right to order a remittitur in disposing of the appeal.

██ We believe the evidence is entirely inadequate to support a verdict for $18,000. Giving plaintiff the full benefit of all testimony on value, the maximum amount to which he is entitled is $10,000.

We do not agree that the verdict shows passion or prejudice, as defendant claims, but we do find the amount of the award is without support in the record. The trial court so found and we reach the same inescapable conclusion.

██ VII. We have considered defendant's complaint about the value testimony and find no merit in it. The only objection made at trial was that the evidence was without proper foundation. We have said such a general objection is insufficient to present anything for review. Counsel must point out the particular deficiency of which he complains so that the adversary may have the opportunity to remedy the defect. Hedges v. Conder, 166 N.W.2d 844, 856 (Iowa 1969).

VIII. We find no reversible error and we therefore affirm the trial court on condition that the plaintiff file a remittitur in the office of the clerk of this court within 30 days from the date of this opinion, agreeing to accept $10,000 in full satisfaction of the judgment. In that event judgment shall stand in his favor in the amount of $10,000, together with costs and interest from the date the judgment was rendered in the district court. Otherwise defendant shall have a new trial.

Affirmed on condition.

All Justices concur except BECKER, J., who dissents.

BECKER, Justice (dissenting).

I concur in Divisions I through V but dissent as to Division VI through VIII and the result. If the jury verdict is in fact too high the case should be remanded for a new trial on the damage issue. Any other result denies both parties a jury trial. Cf. Oldsen v. Jarvis, (dissent), 159 N.W.2d 431, 437 (Iowa 1968).