GROVE & BURKE, INC., Appellant,

v.

CITY OF FORT DODGE, Appellee.

No. 89–1908.

Supreme Court of Iowa.

May 15, 1991.

Dan T. McGrevey, Fort Dodge, for appellant.

Maurice C. Breen, City Atty., Fort Dodge, for appellee.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN, and SNELL, JJ.

NEUMAN, Justice.

In 1985 the City of Fort Dodge destroyed a bridge spanning the Des Moines River between Amvets Drive and Hawkeye Avenue, replacing it with a bridge that veered north to join Hawkeye Avenue on both the east and west sides of the river. As a result, the traffic on Amvets Drive diminished. To reflect this decrease in traffic, the City reclassified Amvets Drive from a "municipal arterial street" to a "municipal secondary street."

Plaintiff Grove & Burke, Inc., a retailer located on the corner of Amvets Drive and 4th Street N.W., sued the City over these changes. It claimed that by altering the bridge and reclassifying the highway, the City diverted traffic away from plaintiff's business, thereby entitling it to just compensation for a "taking" of its property.

After filing a general denial, the City moved for an adjudication of law points under Iowa Rule of Civil Procedure 105. It asked the court to determine as a matter of law

> whether a re-routing of heavy traffic from one street to another, thereby downgrading the previous street from main arterial thoroughfare to secondary street, constitutes a taking pursuant to the provisions of Article I, Section 18 of the Constitution of Iowa.

Following hearing, the district court ruled that relocating a bridge and reclassifying the street on which plaintiff's business sits, without more, does not amount to a taking of property warranting compensation. We affirm.

I.  Article I, section 18 of the Iowa Constitution provides, in pertinent part: "Private property shall not be taken for public use without just compensation first being made...." It is axiomatic that before compensation comes due, there must be a public "taking" of the landowner's property. *R & R Welding Supply Co. v. City of Des Moines*, 256 Iowa 973, 976, 129 N.W.2d 666, 668–69 (1964). Grove & Burke premises its taking claim on the theory that the City's rerouting of the bridge traffic impaired access to its property. The City contends that plaintiff Grove & Burke has no proprietary interest in either the flow of traffic past its business or the classification of the street abutting its property.

■ II.  The first issue on appeal is whether the case was properly decided as a matter of law under rule 105. Grove & Burke suggests it was not. Having framed its taking claim as a deprivation of access case, it relies on opinions wherein we have held that whether a property owner has been denied reasonable access is ordinarily a question of fact. *See, e.g., Simkins v. City of Davenport*, 232 N.W.2d 561, 566 (Iowa 1975); *Stom v. City of*

*Council Bluffs,* 189 N.W.2d 522, 526 (Iowa 1971).

The flaw in plaintiff's argument is that this is not an access case. Comparison with access cases makes that plain. In *Stom,* for example, we held that a jury question was generated where a municipal street grading project left a twenty-foot embankment at the intersection with the plaintiff's property, cutting off completely his access to nine lots. *Stom,* 189 N.W.2d at 525–26. *Simkins* involved the question of whether installation of median strips in front of a service station so affected access to the plaintiff's business that it became relevant to the valuation of property condemned for highway improvements. *Simkins,* 232 N.W.2d at 566. Finally, the plaintiff cites *Mulkins v. Board of Supervisors of Page County,* 374 N.W.2d 410 (Iowa 1985), where we affirmed that an abutting landowner has the right to collect damages "whenever his or her access is substantially interfered with or cut off by a road vacation." *Id.* at 413.

Although plaintiff claims no deprivation of access even remotely approaching the impairments alleged in *Stom, Simkins,* or *Mulkins,* it argues that access has been *effectively* denied by the reclassification of Amvets Drive from arterial to secondary. Given the plain meaning of access, however, we think plaintiff's analogy is stretched too thin. *See* Webster's Ninth New Collegiate Dictionary 49 (1986) (defining access as "ability to enter, approach, communicate with, or pass to or from"). Plaintiff concedes that its customers are no less able to enter, approach or patronize its business now than before the reclassification. Thus we are persuaded the case does not turn on disputed questions of reasonable access, but on plaintiff's legal right to claim compensation for lost traffic flow by its business. This is a question of law, not of fact. *See State v. Wood Oil Distrib., Inc.,* 751 S.W.2d 863, 865 (Tex.1988). Adjudication under rule 105 was appropriate. *State ex rel. Miller v. Hydro Mag Ltd.,* 379 N.W.2d 911, 913 (Iowa 1986).

■ III. We have long held that landowners "have no vested right to the continuance of existing traffic past their establishment[s]." *Iowa State Highway Comm'n v. Smith,* 248 Iowa 869, 880, 82 N.W.2d 755, 762 (1957). We have also said that no person has the vested right to keep a highway open once the local municipality decides that it should be altered, vacated, or closed. *Hinrichs v. Iowa State Highway Comm'n,* 260 Iowa 1115, 1122, 152 N.W.2d 248, 252 (1967). Highway relocations that result in circuity of travel and diversion of traffic have generally been held to constitute a valid exercise by the state of its police power. *Simkins,* 232 N.W.2d at 566.

Recent cases from other jurisdictions consistently hold that a landowner can claim no compensable property interest in traffic flow. The Wyoming Supreme Court, for example, has held that diversion of traffic caused by the relocation of a highway is not compensable because "[l]andowners have no property rights in any flow of traffic over a particular highway." *State Highway Comm'n of Wyo. v. Scrivner,* 641 P.2d 735, 738 (Wyo.1982). Other jurisdictions concur. *See B & G Meats, Inc. v. State of Alaska,* 601 P.2d 252, 254–55 (Alaska 1979) ("Restrictions which merely result in a diversion of traffic away from the property are ... not compensable."); *Palm Beach County v. Tessler,* 538 So.2d 846, 849 (Fla.1989) ("A taking has not occurred when governmental action causes the flow of traffic on an abutting road to be diminished."); *Commonwealth v. Hession,* 430 Pa. 273, 279, 242 A.2d 432, 436 (1968); *Ambrose v. City of Knoxville,* 728 S.W.2d 338, 340 (Tenn.App.1986); *Wood Oil Distrib.,* 751 S.W.2d at 865 ("It is well settled that damages to a condemnee's business which result merely from traffic being required to travel a more circuitous route to reach a condemnee's property are not compensable.").

Commentators have uniformly echoed this position. *See* 11 E. McQuillin, *The Law of Municipal Corporations* § 32.26.10, at 387 (1991) ("damage resulting from a diversion of traffic, because of a change of route, is not compensable"); 4A J. Sackman, *Nichols', The Law of Eminent*

*Domain* § 14.15[4], at 14–340 (rev. 3d ed. 1990) ("The owner is not entitled to receive any compensation for diversion of traffic."); 5A G. Thompson, *Real Property* § 2579, at 149 (1978) (same); 26 Am.Jur.2d *Eminent Domain* § 205, at 888–89 (1966 & Supp.1990) (same).

Underlying all this authority appears to be the rationale that compensation to one plaintiff because of diminished traffic flow would entitle all similarly situated businesses to compensation. The chilling effect this would create on a municipality's valid exercise of its police power is readily apparent. This rationale is consistent with the rule that absent a showing of special damages, even a taking is not compensable. *Stom*, 189 N.W.2d at 529. Where all property owners are similarly affected by vacation of a street, for example, none are entitled to compensation. *Borghart v. City of Cedar Rapids*, 126 Iowa 313, 316, 101 N.W. 1120, 1120 (1905).

Persuaded by the reasoning of this authority, we conclude that the district court correctly decided that no compensable "taking" occurred. We hold as a matter of law that the City's reclassification of a street and the resultant reduction in traffic flow in front of plaintiff's business furnishes no basis for a claim of compensation under the "taking" clause of our constitution. The judgment of the district court is affirmed.

AFFIRMED.