# IN THE COURT OF APPEALS OF IOWA

No. 18-0984
Filed May 1, 2019

**JON D. LUCKSTEAD,**
    Plaintiff-Appellant,

**vs.**

**IOWA DEPARTMENT OF TRANSPORTATION,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica Zrinyi Wittig, Judge.


A property owner appeals the district court judgment on the compensability of access and the appraisement of damages. **AFFIRMED.**



E. Kelly Keady of Biersdorf & Associates, P.C., Minneapolis, Minnesota, for appellant.

Les V. Reddick and Todd L. Stevenson of Kane, Norby & Reddick, P.C., Dubuque, for appellee.


Heard by Potterfield, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Jon Luckstead appeals the district court judgment finding no compensable taking occurred due to the Iowa Department of Transportation's (DOT) relocation of the access point to Luckstead's property and finding as proper the compensation awarded by the Dubuque County Compensation Commission for two parcels of land. We affirm.

### I.     Background Facts & Proceedings

In 1972, Luckstead purchased property just south of Dubuque, where he developed the Tamarack Business Park. The business park, zoned for light industrial use, is located on the west side of U.S. Highway 151/61. The property is only ten to twenty percent developed. Luckstead owns lots in the business park and surrounding land that is used for farming. A frontage road running parallel to the highway along the length of the park has direct access to both northbound and southbound traffic on the highway via Tamarack Drive. The at-grade access was a result of a revocable license granted to a predecessor owner by the Iowa State Highway Commission (ISHC). As part of the license, the ISHC reserved the right "to remove or relocate the special public road connection."[1]

In the early 2000s, the DOT began to plan and acquire land to build a southwest arterial road, which would provide an alternate, controlled-access route along the south side of Dubuque from U.S. Highway 20 to Highway 151/61. The project also upgrades Highway 151/61 between the southwest arterial road and

---

[1]     In 1974, "the duties and responsibilities of the state highway commission" were transferred to the newly-created DOT. *See* 1974 Iowa Acts ch. 1180, preamble. All further references will be to the DOT for purposes of uniformity.

the interchange of Highways 151 and 61 to a primary highway with controlled access; permanent access will only be allowed at interchange locations, eliminating the at-grade access points.[2] The interchange between the arterial road and Highway 151/61 will be directly north of Luckstead's property. The current frontage road will be extended north to provide access via the southwest arterial road at the highway interchange, and the current at-grade access point for the business park from Highway 151/61 will be condemned. The design plans, finalized in 2009, incorporated changes suggested by Luckstead, shifting the designed frontage road connection location and the road's alignment to lessen impact on Luckstead's property.[3]

In 2015, pursuant to Iowa Code "Chapters 28E, 306, 306A, 306B, 306C, 313, 6a, and 6B [(2015)]," the DOT acted to condemn the access point and acquire title to land for purposes of relocating the Tamarack Business Park's access via an extension of the existing frontage road to the planned arterial interchange. The acquired land was part of two adjacent parcels owned by Luckstead—Parcel 184 and Parcel 187. The Parcel 184 acquisition included fee title to just over four-tenths of an acre and a temporary easement to almost three-quarters of an acre. A "remnant" half acre that contains the Tamarack Business Park sign remains between the frontage road extension and the highway.[4]

---

[2]  In addition to Luckstead's at-grade access, an intersecting street directly across the highway from the business park will also be rerouted via a frontage road.
[3]  Luckstead later reconsidered the 2009 changes he requested, preferring the original design running the frontage road closer to the highway.
[4]  This remnant abuts Parcel 187 between the frontage road and highway.

The Parcel 187-acquired land currently is used primarily as farmland and holds three billboards, a barn, and a garage near the highway. The Parcel 187 acquisition included fee title to six and one-third acres and a temporary construction easement to two-tenths of an acre. The land acquired runs through the middle of the parcel, leaving six and three-fourths acres between the frontage road and the highway and one and two-thirds acres on the west side of the frontage road. The billboards, barn, and garage remain undisturbed. The frontage road will provide access to both sides of Parcel 187 and connects to the existing frontage road in Parcel 184.

Pursuant to statute, a compensation commission was convened to appraise the damages from the condemnation; the commission consisted of two real estate sales persons or brokers, two agricultural owner-operators, and two persons with knowledge of county property values by virtue of their occupation. *See* Iowa Code § 6B.4(2). The compensation commission valued the damages from the takings based on a 2013 appraisal by Fred Lock of Iowa Appraisal and Research. Due to the age of the appraisal, the compensation commission then increased the amount offered to $45,000 for Parcel 184 and $217,954 for Parcel 187, for a total compensation of $262,954. Luckstead appealed both appraisals to the district court, claiming $90,000 in damages for Parcel 184 and $500,000 for Parcel 187. The DOT hired appraisers Lock and Brian Linnemeyer of Agroval to evaluate the value lost, and both estimated the 2015 lost value at $38,860 for Parcel 184 and $224,364 for Parcel 187, for a total of $263,224. The DOT appraisals valued the land as agricultural—its use at the time of the taking.

Luckstead hired appraiser David Reach of The Valuation Group to evaluate the property, and he valued the damages at $35,300 and $288,300 respectively, for a total of $323,600. Reach's valuation appraised the land as industrial development, which the land was also zoned for. Reach also calculated damages related to the change in access point, estimating $319,700 for Parcel 184 and $168,600 for Parcel 187. Reach estimated an additional $618,600 in access damages for the three tenants and two vacant lots within Parcel 184 not otherwise subject to the taking. Reach's estimate predicted an uneconomic remnant in Parcel 187, but he included the land at a reduced value in his estimate.

The DOT sought to bifurcate Luckstead's access-damage claims from the underlying proceedings. A non-jury trial was held on May 23 and 24, 2017, which also included the hearing on the motion to bifurcate. After Luckstead rested, the DOT entered a motion to dismiss the access question for failure to prove unreasonable access.

On June 1, the court issued an order on the access issue, finding no compensable taking resulted from the relocation of the access point, essentially granting the DOT's motions. The court issued a judgment on the remaining issues on May 8, 2018. The court found the DOT's appraisal to be more accurate on current conditions, as the future development value was speculative. The court affirmed the compensation commission's award. Luckstead appeals.

## II.     Standard of Review

Our review is for correction of errors of law. Iowa R. App. P. 6.907; *Sunrise Developing Co. v. Iowa Dep't of Transp.*, 511 N.W.2d 641, 643 (Iowa Ct. App. 1993). While we are not bound by the trial court's legal conclusions and application

of legal principles, "the district court's findings of fact are binding on us if they are supported by substantial evidence." *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). "The question of damages is a question of fact." *Sunrise Developing*, 511 N.W.2d at 645.

### III. Analysis

**A.    Access.** Luckstead claims the DOT's proposed relocation of the access point of his frontage road from direct access to a controlled access point a mile down the road constitutes a compensable taking under the Iowa Constitution. The district court addressed the access issue in a separate post-trial order following the motions to bifurcate and dismiss, finding the relocation of the access did not constitute a compensable taking under Iowa law. In particular, the district court found the new access point provided "free and convenient access" that would not substantially interfere with Luckstead's means of ingress and egress. Luckstead claims the ruling was contrary to law and the undisputed evidence.

The direct-access right held by Luckstead, obtained by a prior property owner, was a permissive-use right conditioned on the DOT's ability to remove or relocate the public road connection. In the granting document, the property owner agreed to hold the State and the DOT "harmless of any damage or losses that may be sustained" by enforcement of the conditions. In other words, to obtain the access point in 1969, the owners agreed to hold the State harmless for a future removal or relocation of the access point. When Luckstead purchased the property and the access point, he also assumed the conditions imposed—including the agreement to hold the State and the DOT harmless for relocation of the access

point. While the district court did not find this condition alone to be dispositive, it is relevant to the compensability of the relocated access.

Luckstead maintains a compensable taking occurred despite the revocability and "hold harmless" provisions in the document permitting a direct-access point. He asks us to apply a "change in use" standard for determining if a moved access point constitutes a compensable taking under the Iowa Constitution. Luckstead cites no Iowa case or statutory law in support of his theory, instead citing cases from other jurisdictions. We do not find the foreign jurisdiction cases Luckstead cites persuasive.

Iowa Code section 306A.6 provides the DOT the authority to designate an existing highway as controlled-access and eliminate at-grade access points. No person has "any right of ingress or egress to, from, or across controlled-access facilities to or from abutting lands, except at such designated points at which access may be permitted, upon such terms and conditions as may be specified." Iowa Code § 306A.4. The chapter further provides,

> [H]ighway authorities having jurisdiction and control over the highways of the state . . . may acquire private or public property rights for controlled-access facilities and service roads, including rights of access, . . . by gift, devise, purchase, or condemnation in the same manner as such units are authorized by law to acquire such property or property rights in connection with highways and streets within their respective jurisdictions. All property rights acquired under this chapter shall be in fee simple.

*Id.* § 306A.5(1).

Under Iowa law, "the right of access may not be taken away or unreasonably interfered with unless just compensation is paid under Article I, section 18 of our constitution." *Stom v. City of Council Bluffs*, 189 N.W.2d 522,

525 (Iowa 1971). That said, regulation of the right of access to a public highway does not constitute a *compensable* taking "unless it deprive[s] the property of reasonable access to the highway." *Wilson v. Iowa State Highway Comm'n*, 90 N.W.2d 161, 168 (Iowa 1958). A property owner may only claim damages relating to a right of access if there is "substantial or material impairment or interference with the right of access." *In re Primary Road 1-80*, 126 N.W.2d 311, 317 (Iowa 1964). Abutting land-owners are only entitled to "free and convenient access to their properties," not to access their property at any and all points along a public highway. *Iowa State Highway Comm'n v. Smith*, 82 N.W.2d 755, 759 (Iowa 1957). The determination of whether an abutting property owner has been denied reasonable access is a question of fact, not law, and is circumstance-specific. *Simkins v. City of Davenport*, 232 N.W.2d 561, 566 (Iowa 1975). If no substantial or material impairment or interference occurs, access is not considered in the determination of damages. *See Primary Road 1-80*, 126 N.W.2d at 317.

Luckstead claims the access relocation from the at-grade access to the extension of the business park's current frontage road directly to the interchange for the controlled-access highway substantially impairs his access to his property. "Mere inconvenience does not establish lack of reasonable access." *Owens v. Brownlie*, 610 N.W.2d 860, 868 (Iowa 2000). "[C]ircuity of travel is not a compensable element of damage to the adjoining landowner." *Nelson v. Iowa State Highway Comm'n*, 115 N.W.2d 695, 697 (Iowa 1962). The new frontage road will provide direct access between the arterial interchange with Highway 151/61 and the business park. The frontage road will include access on both sides, providing "free and convenient" access to Luckstead's property.

Luckstead's change in access is no different from the other property owners in the Tamarack Business Park or from the public in general. "Where all property owners are similarly affected by vacation of a street, . . . none are entitled to compensation." *Grove & Burke, Inc. v. City of Fort Dodge*, 469 N.W.2d 703, 706 (Iowa 1991). If a property owner's access is not terminated or obstructed, the owner has the same access to the highway as before the closing, and the owner's damage is the same kind as the public—though possibly greater in degree—then "he has lost no property right for which he is entitled compensation." *Warren v. Iowa State Highway Comm'n*, 93 N.W.2d 60, 65 (Iowa 1958).

We find substantial evidence supports the district court finding the relocation of the access point under these circumstances did not constitute a compensable taking under the Iowa Constitution.

**B.     Compensation Commissioner's Award.** Luckstead claims on appeal the district court improperly relied on the compensation commission's damage award. In support, he points to the 1999 removal from Iowa Code section 6B.21 of the sentence, "The appraisement of damages by the compensation commission is admissible in the action." *See* 1999 Iowa Acts ch. 171, § 13. Luckstead states the repeal of this sentence indicates the legislature intended the damage appraisement to no longer be admissible. This interpretation ignores the context provided by the surrounding statutes.

The "petition" Luckstead filed with the district court was an appeal of the compensation commission's appraisement of damages. *See* Iowa Code §§ 6B.18, .22. Luckstead's interpretation would have the district court ruling on an appeal without knowing the decision appealed from, and it ignores the provisions

of the surrounding statutes. For example, the statute governing the filing of the appeal directs the sheriff to file a certified copy of the applicable portions of the assessment. *Id.* § 6B.18(4). This directly contradicts Luckstead's claim the appraisement is not admissible. Luckstead does not provide any authority by which a reviewing court, even if trying a case anew, cannot consider the appealed appraisement.

We find the district court did not err when it considered the compensation commission's appraisal of damages.[5]

**C.     Remnant.** The district court found Luckstead's appraiser could not make an analysis as to an uneconomic remnant as part of the damage determination. The term "remnant" was used both to describe what the appraiser termed "uneconomic remnants" and also when referring to the unacquired portions of Parcel 187 following the taking for the frontage road through the parcel. The district court's judgment is correct that if Luckstead wished compensation for the uneconomic remnants, the proper procedure would have been through a separate action filed in the district court rather than part of this action. However, it appears Luckstead intends to keep and make use of the remnant and included it within his appraisal, albeit at a discounted rate. Because he did not file the separate action, the remnants cannot be valued separately from the remainder of the property.

**D.     Other Facts.** Luckstead makes two additional claims regarding the district court's factual findings.

---

[5]  Luckstead's appraiser testified his own and the DOT's estimates were "ballpark," simply showing a difference in opinion and neither one was wrong.

*1. Multiple parcels.* Luckstead questions the district court's "criticism" of his appraiser subdividing Parcel 187 into multiple lots, claiming the finding questions the appraiser's credibility. However, he does not suggest any erroneous legal conclusion or application of legal principle related to the court's finding. Moreover, the court's judgment specifically noted Luckstead's appraiser was clearly knowledgeable and highly qualified, but his appraisal focused on the non-compensable access issue. We find the trial court's observation is supported by substantial evidence.

*2. New access benefit.* Luckstead claims the district court improperly considered whether he benefitted from the condemnation. Article I, section 18 of the Iowa Constitution provides the assessment of damages "shall not take into consideration any advantages that may result to said owner on account of the improvement for which it is taken." Luckstead provides no evidence the district court decreased or otherwise changed the assessed damages based on its observation. Because the court's observation did not change its assessment of Luckstead's damages, we find no error in the court's application of the law.

**AFFIRMED.**